IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SEAN T. NICHOLAS,<br><br>Plaintiff,<br><br>v.<br><br>DAVID A. PLASTINO,<br><br>Defendant. | Case No. 23-cv-1259<br><br><br>**COMPLAINT** |

Plaintiff, Sean T. Nicholas ("Plaintiff"), by way of Complaint against Defendant, David A. Plastino ("Defendant"), alleges as follows:

### PARTIES

1. Plaintiff is an individual who currently resides in and is domiciled in the State of New York. Prior to July 2021, Plaintiff was a resident of and domiciled in the State of New Jersey.

2. Defendant is an individual residing in and domiciled in the Commonwealth of Pennsylvania, with an address of 1614 Sorrell Road, Malvern, Pennsylvania 19355.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

4. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2).

### FACTS

5. Plaintiff previously operated an art gallery in New York City.

6. Plaintiff was introduced to Defendant through Plaintiff's sister, who was in a relationship with Defendant at the time.

7.  From in or around 2016 through early 2018, Defendant paid Plaintiff's gallery a total of $128,082.00 for eight (8) works of art, which were to be provided to Defendant through Plaintiff's gallery.

8.  Five (5) of the eight (8) works Defendant purchased were stored by Plaintiff for no charge to Defendant and ultimately Defendant decided that he did not want those five (5) works.

9.  One (1) of the eight (8) works Defendant purchased with intent to resell through Plaintiff's gallery. Plaintiff's gallery put that work on consignment but, as a result of various circumstances involving Plaintiff's partner in the gallery, Defendant did not receive the proceeds of a resale of that work, and Plaintiff was unable to provide Defendant with possession of the other two (2) works of art. The three (3) works paid for by Defendant but that were either undelivered to Defendant, or for which Defendant was uncompensated, shall be referred to as the "Art Purchased But Undelivered."

10. In or around July 2018, while Plaintiff was traveling internationally, Defendant, aided by Plaintiff's sister, entered Plaintiff's home in New Jersey without permission and removed thirteen (13) works of art without Plaintiff's authorization. The thirteen (13) works improperly removed from Plaintiff's home shall be referred to as the "Misappropriated Art." Defendant, however, did not obtain the "provenance" documents for the Misappropriated Art, which establish Plaintiff's ownership of the works. At all relevant times, Plaintiff has had the provenance documents for the Misappropriated Art in his possession and/or control.

11. On information and belief, Defendant took the Misappropriated Art to his residence in Malvern, Pennsylvania, where some or all of it is currently located.

12. When Plaintiff returned to New Jersey, Defendant and Plaintiff's sister told Plaintiff that Defendant had removed the art from Plaintiff's home in order to reimburse himself for the Art Purchased But Undelivered.

13. On July 31, 2018, Plaintiff and Defendant met at Plaintiff's home in New Jersey to discuss how to resolve the dispute between them relating to the Art Purchased But Undelivered and the Misappropriated Art.

14. In advance of the meeting, Defendant prepared a proposed agreement to resolve the parties' dispute. Defendant proposed that he would hold the Misappropriated Art as "collateral" until such time as Plaintiff could reimburse Defendant for the $128,082.00 owed to Defendant for the Art Purchased But Undelivered.

15. Although Plaintiff was upset that Defendant had entered Plaintiff's home without authorization and took the Misappropriated Art, Plaintiff felt bad that Defendant had paid for the Art Purchased But Undelivered and wanted to ensure that Defendant was reimbursed.

16. Therefore, Plaintiff entered into the agreement that Defendant presented to Plaintiff at his home on July 31, 2018, which is entitled "Agreement Between Sean T. Nicholas and David A. Plastino to Settle All Claims Between the Parties Concerning the Art Listed in this Agreement" (the "Agreement"). A true and correct copy of the Agreement is attached hereto as **Exhibit A**.

17. Under the Agreement, Plaintiff and Defendant agreed "to release each other from all claims between them concerning the art listed" in the Agreement, which includes the Art Purchased But Undelivered and the Misappropriated Art.

18. The Agreement provides that, in "total compensation to [Defendant] and complete satisfaction of all claims by [Defendant] against [Plaintiff] in reference to the [Art Purchased But

Undelivered], [Plaintiff] has offered the [Misappropriated Art] as collateral to assure [Plaintiff's] fulfilling one of the options listed on page 2 of this agreement."

19. The Agreement further provides that, "[u]p to and including March 31, 2019, [Plaintiff] has the following option to satisfy all claims [Defendant] has relative to the above referenced art and for [Plaintiff] to receive back the art given to [Defendant] as collateral": "1-Deliver ALL the art [Defendant] purchased or 2-Pay [Defendant] $124,582.00."

20. The Agreement further provides that Plaintiff "has the right to sell any collateral piece, except the Titus Kaphar and Miss Bugs, and deliver the proceeds of sale to [Defendant] before 3/31/19 as payment toward the 124,582."

21. The Agreement does not provide for any transfer of ownership in the Misappropriated Art from Plaintiff to Defendant, whether before or after the March 31, 2019 date set forth in the Agreement. Ownership of the Misappropriated Art was always intended to remain with Plaintiff, and, as set forth above, Plaintiff is in possession and control of the provenance documents for the Misappropriated Art.

22. After entering into the Agreement, Plaintiff's gallery business closed its operations.

23. Multiple works of art that Plaintiff assisted Defendant in acquiring, however, particularly works by "Banksy," became very valuable and resulted in a great benefit to Defendant.

24. As a result of personal and financial issues and later the Covid-19 pandemic, Plaintiff has been unable to pay Defendant the amount owed under the Agreement.

25. Certain of the Misappropriated Art, however, particularly the work by Titus Kaphar, have greatly increased in value. The Misappropriated Art held by Defendant as "collateral" is now much more valuable than the amount owed to Defendant under the Agreement. On information and belief, the total value of the Misappropriated Art being held by Defendant, but

to which title is still vested in Plaintiff, is approximately $300,000-350,000 – more than double the amount that is owed to Defendant under the Agreement.

26. On March 23, 2023, Plaintiff's counsel sent Defendant a letter advising Defendant that Plaintiff "intends to satisfy his obligation to you by virtue of a sale of the Collateral" and requesting that Defendant contact Plaintiff's counsel to "discuss an orderly manner by which to facilitate a sale of the Collateral and repayment of the debt owed to" Defendant. A true and correct copy of the March 23, 2023 letter to Defendant is attached hereto as **Exhibit B**.

27. Thereafter, Defendant's counsel contacted Plaintiff's counsel, but the parties were not able to reach a resolution of the dispute.

28. Plaintiff is ready, willing and able to effectuate a sale of the Misappropriated Art through an independent third-party so that Defendant is fully paid under the Agreement and Plaintiff will receive the surplus funds, which are rightfully Plaintiff's.

29. Defendant, however, has refused to effectuate a sale of the Misappropriated Art.

30. As a result of Defendant's actions and omissions, Plaintiff has incurred and is continuing to incur substantial damages.

## COUNT ONE

## REPLEVIN

31. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint as if set forth fully herein.

32. As more fully set forth above, Plaintiff and Defendant entered into the Agreement, the purpose of which was for the amount owed to Defendant to be secured by the Misappropriated Art until Plaintiff could pay the amount due to Defendant.

33. The Agreement has expired and Plaintiff, as owner of the Misappropriated Art, is entitled to possession of the Misappropriated Art.

34. Under the plain terms of the Agreement, Defendant has not been given ownership of the Misappropriated Art, but rather is holding the Misappropriated Art as collateral. At all relevant times, Plaintiff has been the rightful owner of the Misappropriated Art and is in possession of the provenance documents.

35. Plaintiff does not otherwise have the financial wherewithal to pay Defendant, but the value of the Misappropriated Art exceeds the amount owed to Defendant.

36. Plaintiff requested that Defendant make arrangements with Plaintiff to sell the Misappropriated Art.

37. Despite Plaintiff's demand, Defendant has refused to arrange for a sale of the Misappropriated Art and us unlawfully detaining the Misappropriated Art.

38. Defendant is holding the Misappropriated Art wrongfully and contrary to Plaintiff's superior right to possession.

39. The Misappropriated Art should be sold to satisfy the debt to Defendant and to return the remaining equity to Plaintiff.

**COUNT TWO**

**BREACH OF THE AGREEMENT**

40. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint as if set forth fully herein.

41. Plaintiff and Defendant entered into the binding Agreement in order to resolve the disputes between them relating to the Art Purchased But Undelivered and the Misappropriated Art.

42. Pursuant to the Agreement, Defendant was to hold the Misappropriated Art as collateral for the payment of $124,582.00 owed to him by Plaintiff.

43. Plaintiff, as owner of the Misappropriated Art, is entitled to possession of the Misappropriated Art if and when the amount owed to Defendant is paid.

44. Plaintiff requested that Defendant make arrangements with Plaintiff to sell the Misappropriated Art, so that the amount owed to Defendant could be paid and Plaintiff would receive his remaining equity interest in the Misappropriated Art after the proposed sale.

45. Defendant, however, has refused to arrange for a sale of the Misappropriated Art.

46. Defendant's refusal to arrange for a sale of the Misappropriated Art has breached the Agreement and is preventing Plaintiff from recovering his interests in the Misappropriated Art.

47. As a result of Defendant's breach of the Agreement, Plaintiff has incurred and will continue to incur damages.

## COUNT THREE

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

48. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint as if set forth fully herein.

49. Every contract has an implied covenant that imposes on each party a duty of good faith and fair dealing in its performance and enforcement.

50. The implied covenant of good faith and fair dealing imposes a duty to exercise a contractual obligation, even a contractual obligation expressly conferring the exercise of discretion, in good faith to an agreed common purpose and consistency with the justified expectations of the other party.

51. The purpose of the Agreement was for Defendant to hold the Misappropriated Art as collateral to secure payment of the amount owed to Defendant under the Agreement and, after Defendant has been paid, to return the Misappropriated Art to Plaintiff.

52. As set forth above, Plaintiff has requested a sale of the Misappropriated Art so that the amount owed to Defendant under the Agreement may be paid and the remaining equity in the Misappropriated Art be returned to Plaintiff.

53. Defendant, however, has refused to cooperate with Plaintiff to proceed with a sale of the Misappropriated Art.

54. Defendant's unreasonable refusal is destroying the bargain negotiated by the parties under the Agreement: Defendant is not being paid the amount owed to him, and Plaintiff is not receiving either the Misappropriated Art or the remaining equity after a sale of the Misappropriated Art. Instead, Defendant is obstinately retaining possession of the Misappropriated Art, knowing that it has substantial value but that it cannot be sold without the Misappropriated Art's provenance documents, which are in Plaintiff's possession and control.

55. As a direct and proximate result of Defendant's lack of good faith and fair dealing, Plaintiff has been damaged, suffered losses and continues to experience pecuniary harm.

## COUNT FOUR

## UNJUST ENRICHMENT

56. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint as if set forth fully herein.

57. Plaintiff and Defendant had disputes between them relating to the Art Purchased But Undelivered and the Misappropriated Art.

58. Plaintiff and Defendant determined to resolve the disputes between them by entering into the Agreement.

59. To the extent that the determines that the Agreement is invalid, then Plaintiff has conferred a substantial benefit on Defendant by allowing Defendant to take possession of the Misappropriated Art.

60. The Misappropriated Art's value far exceeds the amount owed to Defendant for the Art Purchased But Undelivered.

61. Nevertheless, Defendant has refused to allow a sale of the Misappropriated Art so that Plaintiff and Defendant can be made whole.

62. It would be unfair and unjust for Defendant to retain the value of the Misappropriated Art, when its value exceeds the value of the amount owed to Defendant.

## COUNT FIVE

## CONVERSION

63. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs of this Complaint as if set forth fully herein.

64. Plaintiff is the rightful owner of the Misappropriated Art and is in possession of its provenance documents.

65. Defendant is wrongfully retaining the Misappropriated Art despite the fact that Plaintiff has demanded that it be sold.

66. Plaintiff has a right to immediate possession of the Misappropriated Art.

67. Defendant is wrongfully interfering with Plaintiff's rights in the Misappropriated Art by refusing to sell the art.

68. As a result of Defendant's wrongful interference with Plaintiff's rights in the Misappropriated Art, Plaintiff has incurred and will continue to incur damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendant, and grant the following relief in Plaintiff's favor:

1. Equitable relief directing a sale of the Misappropriated Art to pay the amount owed to Defendant under the Agreement and providing for any and all surplus funds to be paid over to Plaintiff;

2. Compensatory damages in an amount to be determined at trial, but not less than $300,000;

3. Granting Plaintiff possession of the Misappropriated Art;

4. Granting Plaintiff any and all other equitable remedies available;

5. Directing Defendant to pay Plaintiff's costs of bringing this action, including, but not limited to, Plaintiff's attorneys' fees; and

6. Such other and further relief as the Court deems just and proper.

    Respectfully submitted,

    McANDREW VUOTTO, LLC

    By:   */s/Jonathan P. Vuotto*
        Jonathan P. Vuotto (No. 315601)
        13 Mt. Kemble Avenue
        Morristown, New Jersey 07960
        (973) 538-6308
        Attorneys for Plaintiff, Sean T. Nicholas

Dated: March 31, 2023

# EXHIBIT A



7/30/2018

<u>Agreement between Sean T. Nicholas(SN) and David A. Plastino(DP) to settle all claims between the Parties concerning the art listed in this agreement</u>

Both parties agree to release each other from all claims between them concerning the art listed below.
Art Purchased and paid for by DP but undelivered:

| Artist | Title | Purchase Price | |
|---|---|---|---|
| Stacey Leigh | "Squirt" | $6666 | |
| Stacey Leigh | "More Human than Human" | $6666 | |
| Stacey Leigh three prints | "Angela from Alabama" | -0- | included because bought |
| Damien Hirst | "Mickey and Minnie" 2 prints | $26,000 | |
| Titus Kaphar | "Shred of Truth" | $42,750 | |
| Reena Spaulings | "Dans la rue(56 Leonard) | $35,000 | |
| Jeanette Hayes | " Good Times" | $2,000 | |
| Jeanette Hayes | " Despicable Jeanette" | $8,000 | |
| Total | | $128,082 | |

In total compensation to DP and complete satisfaction of all claims by DP against SN in reference to the above listed art purchased by DP but still undelivered, SN has offered the following paintings to be given to DP as collateral to assure SN's fulfilling one of the options listed on page 2 of this agreement :

Collateral

| Artist | Title/Description |
|---|---|
| Shepard Fairey | print, portrait of a woman |
| Titus Kaphar | original oil and tar, "The Children" 2012 |
| Murakami | 2 posters, homage to francis bacon, study of Isabel Rawsthorne |
| Faile | print  of a Madonna |
| Faile | print, dirty dancers, 50% off |
| Faile | print seduction of the mask |
| Dot Dot Dot | print  Napolean |
| Dot dot dot | print "Handgun" |
| Judith Supine | print of neon colored woman with white glasses |
| Bast | print  Lady Gaga |

| | |
|---|---|
| Miss Bugs | Geisha with surgical blades |
| Harlan Miller | don't let the bastards cheer you up |
| Damian Hirst | Polka dots with white background |

Up to and including March 31, 2019, SN has the following option to satisfy all claims DP has relative to the above referenced art and for SN to receive back the art given to DP as collateral

1-Deliver ALL the art DP purchased or

2- Pay DP $124,582

SN has the right to sell any collateral piece, except the Titus Kaphar and Miss Bugs, and deliver the proceeds of sale to DP before 3/31/2019 as payment toward the 124,582.

_David A. Plastino_
7/31/2019

_Sean T. Nicholas_
7/31/18

# EXHIBIT B



Jonathan P. Vuotto, Esq.<br>
jpv@mcandrewvuotto.com<br>
Direct: (973) 532-6242

March 23, 2023

<u>**Via First Class Mail**</u>

David A. Plastino
1614 Sorrell Road
Malvern, PA 19355
dplas@comcast.net

      Re:      **Agreement Between Sean T. Nicholas and David A. Plastino to Settle All Claims Between Them Concerning Certain Art, Dated July 31, 2018 (the "Agreement")**

Dear Mr. Plastino:

      This firm represents Sean T. Nicholas in connection with the above-referenced Agreement.

      As you know, the Agreement provides that you will hold certain art as collateral (the "Collateral") for Mr. Nicholas's obligation to you in the amount of $124,582.00, as more specifically set forth therein. Mr. Nicholas intends to satisfy his obligation to you by virtue of a sale of the Collateral.

      Therefore, please contact me as soon as possible so that we can discuss an orderly manner by which to facilitate a sale of the Collateral and repayment of the debt owed to you.

      Thank you.

Very truly yours,<br><br>
<i>J Vuotto</i><br>
Jonathan P. Vuotto