Jonathan P. Vuotto, Attorney No. 315601
McANDREW VUOTTO, LLC
13 Mt. Kemble Avenue
Morristown, New Jersey 07960
(973) 538-6308
Attorneys for Plaintiff, Sean T. Nicholas

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SEAN T. NICHOLAS, | Case No. 23-cv-1259 |
| Plaintiff, | |
| v. | |
| DAVID A. PLASTINO, | **DECLARATION OF JONATHAN P. VUOTTO IN SUPPORT OF PLAINTIFF'S MOTION TO REOPEN CASE TO ENFORCE SETTLEMENT** |
| Defendant. | |

**JONATHAN P. VUOTTO, ESQ.**, hereby declares as follows:

1.  I an attorney duly admitted to practice before this Court and I am a member of McAndrew Vuotto, LLC, attorneys for Plaintiff, Sean T. Nicholas ("Plaintiff"), in the above-captioned action. I have personal knowledge of the facts set forth herein and submit this Declaration in support of Plaintiff's motion to reopen this case to enforce the settlement between Plaintiff and Defendant, David A. Plastino ("Defendant").

2.  Plaintiff filed his Complaint in this matter on March 31, 2023. [ECF Doc. 1.]

3.  Defendant filed an Answer, Affirmative Defenses and Counterclaim on June 5, 2023 (after initially defaulting). [ECF Doc. 10.]

4.  The basic facts of this matter are as follows, as set forth in the accompanying Declaration of Sean T. Nicholas ("Nicholas Declaration") submitted herewith. Plaintiff is in the art business, having owned multiple art galleries in New York. Nicholas Declaration, ¶2. From

in or around 2016 through early 2018, Defendant paid Plaintiff's gallery a total of $128,082.00 for certain works of art, which were to be provided to Defendant through Plaintiff's gallery. Nicholas Declaration, ¶3. Through circumstances that were no fault of Plaintiff, Defendant did not receive the works (the "Art Purchased But Undelivered"). Nicholas Declaration, ¶4. In or around July 2018, while Plaintiff was traveling internationally, Defendant, aided by Plaintiff's sister, entered Plaintiff's home in New Jersey without permission and removed thirteen works of art without Plaintiff's authorization (the "Misappropriated Art"). *Id.* Defendant took the Misappropriated Art to his residence in Malvern, Pennsylvania, where, on information and belief, it is still currently located. *Id.* On July 31, 2018, Plaintiff and Defendant met at Plaintiff's home in New Jersey to discuss how to resolve the dispute between them relating to the Art Purchased But Undelivered and the Misappropriated Art. Nicholas Declaration, ¶6. Plaintiff and Defendant agreed that Defendant would hold the Misappropriated Art as "collateral" until such time as Plaintiff could reimburse Defendant for the $128,082.00 owed to Defendant for the Art Purchased But Undelivered. *Id.* Plaintiff and Defendant entered into the agreement, which is entitled "Agreement Between Sean T. Nicholas and David A. Plastino to Settle All Claims Between the Parties Concerning the Art Listed in this Agreement" (the "Agreement"). *Id.* A true and correct copy of the Agreement is attached to the Complaint as Exhibit A. In March 2023, Plaintiff attempted to satisfy the obligation to Defendant by a sale of the Misappropriated Art held by Defendant as collateral. Nicholas Declaration, ¶10. Defendant refused to discuss an orderly manner to facilitate a sale of the Misappropriated Art, so Plaintiff filed this action. *Id.*

5.     By agreement and request of the parties, this matter was referred to Magistrate Judge Lynne A. Sitarski for a settlement conference by Order dated June 8, 2023. [ECF Doc. 13.]

6.      Judge Sitarski held a settlement conference by Zoom on June 14, 2023. After approximately five hours of negotiations, Plaintiff made a final settlement proposal consisting of: (i) the most valuable work included in the Misappropriated Art, a piece by Titus Kaphar, would be sold at auction by a third-party auction house in September 2023; (ii) from the proceeds of the sale, $128,082.00 would be paid to Defendant and any overage would go 60% to Plaintiff and 40% to Defendant; (iii) Defendant would return the remaining Misappropriated Art to Plaintiff, which Plaintiff would hold until the $128,082.00 was paid to Defendant; and (iv) the parties would mutually release each other from any and all claims. Defendant rejected Plaintiff's final proposal and the settlement conference ended.

7.      On June 15, 2023, Judge Sitarski's chambers contacted me, stating that Defendant changed his mind and would accept Plaintiff's final proposal. The parties and Judge Sitarski then participated in a second Zoom settlement conference on June 15, 2023, during which the parties agreed to the following primary terms of their settlement in Judge Sitarski's presence: (i) the Titus Kaphar work would be picked up from Defendant's residence by an auction house and offered for sale at auction in September 2023; (ii) Defendant would promptly deliver the remaining Misappropriated Art to Plaintiff, to be held in escrow pending Defendant receiving $128,082.00 from the sale of the Titus Kaphar work; (iii) any overage from the proceeds of the Titus Kaphar sale would be paid 60% to Plaintiff and 40% to Defendant; and (iv) the parties would mutually release each other from any and all claims in a formal settlement agreement.

8.      After the second settlement conference, also on June 15, 2023, the Court entered an Order dismissing the case subject to Local Rule 41.1(b). [ECF Doc. 17.]

9.      On June 19, 2023, I emailed Defendant's counsel a proposed Settlement Agreement and Stipulation of Dismissal. A true and correct copy of my June 19 email with the draft

documents is attached hereto as **Exhibit 1**.  The proposed Settlement Agreement contained the primary terms of the parties' settlement as agreed before Judge Sitarski.

10.     On June 22, 2023, Defendant called Plaintiff and left Plaintiff a voicemail message stating that Defendant received the proposed Settlement Agreement and acknowledging that the parties were "in agreement about how we're moving forward" and requested that Plaintiff call Defendant to work out some items rather than having the attorneys go back and forth.  Plaintiff did not return Defendant's call.  See Nicholas Declaration, ¶12.

11.     On June 22, 2023, Defendant's counsel called me and said that the proposed Settlement Agreement was mainly acceptable, but that Defendant had three items he wanted to address: (i) Defendant wanted Plaintiff to inspect the Misappropriated Art in an effort to have Plaintiff agree to release any damages that may have been incurred to the Art while it has been in Defendant's possession; (ii) Defendant wanted the proceeds of the Titus Kaphar sale to go into an attorney trust account rather than the proceeds being paid to either Plaintiff or Defendant; and (iii) Defendant wanted Plaintiff to pay to have the Misappropriated Art returned to Plaintiff, or have the cost be deducted from the proceeds of the Titus Kaphar sale.  I responded to Defendant's counsel by email on June 22, 2023, as follows: (i) requesting pictures of the Misappropriated Art because Plaintiff could not travel to Pennsylvania to inspect it; (ii) agreeing to allow the proceeds of the Titus Kaphar sale to be disbursed from an attorney trust account; and (iii) rejecting Defendant's proposal to make Plaintiff responsible for the cost of returning the remaining Misappropriated Art to Plaintiff.  A true and correct copy of my June 22 email to Defendant's counsel is attached hereto as **Exhibit 2**.  None of these items, however, were material to the settlement and each of which could have been easily provided for by the Settlement Agreement sent to Defendant's counsel.

12.     On June 26 and July 5, 2023, I followed up with Defendant's counsel, requesting the pictures of the Misappropriated Art and asking if the parties could proceed to execute the Settlement Agreement that I emailed to Defendant's counsel on June 19, 2023.  A true and correct copy of the June 26 and July 5 emails is attached hereto as **Exhibit 3**.

13.     On July 6, 2023, Defendant provided Plaintiff with pictures of the Misappropriated Art.

14.     On July 7, 2023, I emailed Defendant's counsel a revised proposed Settlement Agreement, with only some minor, non-substantive changes (such as where the Misappropriated Art would be delivered to Plaintiff).  The revised proposed Settlement Agreement again contained all of the primary terms of the parties' agreement before Judge Sitarski.  A true and correct copy of my July 7 email to Defendant's counsel with the revised Settlement Agreement is attached hereto as **Exhibit 4**.

15.     Between July 7 and July 14, 2023, I had multiple emails with Defendant's counsel, following up on the Settlement Agreement.  The only question that Defendant had at that time was which auction house Plaintiff wanted to use.  A true and correct copy of an email chain between me and Defendant's counsel from that time period is attached hereto as **Exhibit 5**.

16.     On July 14, 2023, Defendant's counsel emailed me two letters.  A true and correct copy of Defendant's July 14 correspondence is attached hereto as **Exhibit 6**.  Shockingly, Defendant took the position that Plaintiff supposedly owed Defendant an additional $70,000, which Defendant had never raised before – not in Defendant's Counterclaim and not in the settlement conferences with Judge Sitarski.  Furthermore, Defendant frivolously asserted that the terms contained in Plaintiff's Settlement Agreement, which clearly and concisely included each of the primary provisions of the parties' agreement, were allegedly "not agreed to with Judge

Sitarski." Defendant proposed an entirely different settlement, whereby Defendant would "resolve this matter for a one-time lump sum cash payment."

17.     I responded to Defendant's July 14 correspondence, expressing Plaintiff's surprise at Defendant's attempt to change the settlement.  A true and correct copy of my July 14 email to Defendant's counsel is attached hereto as **Exhibit 7**.

18.     On July 17, 2023, Defendant's counsel emailed me, backtracking from the changed proposal his client had made and the additional mystery "$70,000" owed.  I responded to Defendant's counsel with one minor change to the proposed Settlement Agreement and asked if we could proceed with the settlement.  A true and correct copy of the July 17 email chain is attached hereto as **Exhibit 8**.

19.     After I sent my July 17 email to Defendant's counsel, he called me and made yet another completely different proposal to resolve the parties' dispute.  Defendant's counsel said that there was an $80,000 loan from Defendant to Plaintiff that was secured by 5-6 works, and that Defendant wanted the provenance documents for those 5-6 works in exchange for Defendant "walking away" from the Misappropriated Art without receiving any payment.  Defendant proposed that, if Plaintiff would provide the provenance documents for the other 5-6 works, Plaintiff could arrange to have the Misappropriated Art picked up at Defendant's residence, no money would change hands and the parties would exchange full mutual releases and that would be the end of the dispute.  I emailed Defendant's counsel on July 18, 2023, confirming the proposal that Defendant was making.  I also repeated that Plaintiff has no recollection of any additional loan from Defendant and requested that Defendant provide the names and pictures of the subject works and any agreement between the parties relating to the purported newly-remembered "loan."  A true and correct copy of my July 18 email to Defendant's counsel is attached hereto as **Exhibit 9**.

20.     Defendant's counsel responded to my email on July 18, 2023, inexplicably taking the position that the Settlement Agreement I drafted, which, again, clearly contained the primary terms agreed to before Judge Sitarski, allegedly "does not reflect what was agreed to before the Judge" and that Defendant's new proposal, "although not what was agreed to in June does bring this saga to a quick clean resolution." I responded to Defendant's counsel's email the same day, telling him that Plaintiff disagreed with the statements in his email and again asking for information on the alleged newly-remembered works and loan. A true and correct copy of the emails between me and Defendant's counsel on July 18 is attached as **Exhibit 10**.

21.     Thereafter, I followed up with Defendant's counsel multiple times, on July 24, 27 and 28, 2023. A true and correct copy of my follow-up emails is attached as **Exhibit 11**.

22.     On August 1, 2023, Defendant's counsel emailed me a letter, again proposing Defendant's mysterious alternative settlement proposal. A true and correct copy of the August 1 letter is attached hereto as **Exhibit 12**.

23.     On August 3 and 7, 2023, I followed up with Defendant's counsel to ask how we were to proceed with the settlement.

24.     On August 9, 2023, Defendant's counsel emailed me, stating that he had been "relieved of my duties regarding this matter" and that Defendant is retaining new counsel, who would need time to review the case materials. A true and correct copy of the August 9 email from Defendant's counsel is attached as **Exhibit 13**. Defendant appeared to have changed his mind both about the settlement and about his choice of counsel (or was simply attempting further delay).

25.     On August 10, 2023, I responded to Defendant's counsel (both the withdrawing counsel and apparent new counsel) and noted Plaintiff's objection to the delay in closing the settlement and I again provided them both with the July 7 Settlement Agreement, which contains

all of the terms agreed to before Judge Sitarski. A true and correct copy of my August 10 email is attached as **Exhibit 14**.

26. On August 11, 2023, I received a voicemail message from a third attorney for Defendant, who requested that I send him the July 7 Settlement Agreement. I then emailed Defendant's counsel noting that I had received the message and asking who I should communicate with. Defendant's counsel responded that the third attorney is "co-counsel." A true and correct copy of the August 11 emails is attached as **Exhibit 15**.

27. On August 14, 2023, one of Defendant's attorneys, Warren Wolf, Esq., emailed me, incorrectly stating the terms of the settlement between the parties, specifically that Defendant was to hold the balance of the Misappropriated Art until the Titus Kaphar was sold, which was the opposite of what Defendant specifically agreed to before Judge Sitarski (Defendant agreed to provide the other works to Plaintiff immediately and that Plaintiff would hold them until Defendant was paid). Mr. Wolk also indicated that Defendant was having second thoughts about the settlement terms that Defendant had agreed to, because Defendant "is uncomfortable with some of the risk he is being asked to absorb in the proposed agreement you drafted." Mr. Wolf then raised multiple issues that Defendant had not raised before. (New attorney, new arguments.) A true and correct copy of the August 14 email from Mr. Wolf is attached hereto as **Exhibit 16**.

28. Mr. Wolf's new positions set off an extended round of back-and-forth emails between August 15 and September 6, 2023, and again substantially delayed the parties' settlement and caused Plaintiff to incur additional costs. A true and correct copy of the extensive back-and-forth emails is attached hereto as **Exhibit 17**.

29. During the back-and-forth, Plaintiff made multiple concessions to Defendant's repeated issues with the settlement. See Nicholas Declaration, ¶¶13-18; Ex. 17. Defendant

demonstrated that he wanted to be in control of the sale of the Titus Kaphar work by making repeated, unreasonable demands of Plaintiff, repeatedly bringing up irrelevant arguments about the underlying prior disputes rather than closing the instant settlement, and consistently trying to change the settlement. *See, e.g.,* Ex. 17 ("David having joint control with Christies on the Titus sale and it going back to him if not sold is a deal breaker on the current settlement" (p.7)). Defendant took the false position that his "having joint control with Christie's" was allegedly a "material term of the settlement" – when in fact, Defendant "having joint control with Christie's" was never even brought up during either of the settlement conferences before Judge Sitarski – the words were never spoken by either Defendant or Defendant's counsel during the conferences. Thus, it appears that Defendant is either lying to his new counsel or his new counsel simply has a misunderstanding of what was agreed upon by the parties – which had nothing to do with Defendant "having joint control with Christie's" over the Titus Kaphar sale.

30. As noted, the result of the extended back-and-forth in late August and early September 2023 was that Plaintiff made multiple substantial concessions solely in an effort to close the settlement and have the Titus Kaphar sold to pay off Defendant. Defendant, however, continued to ask for more and more and attempted to improperly and unwarrantedly insert himself in the discussions with Christie's about auctioning the Titus Kaphar work. Defendant's over-reaching and ever-increasing demands – none of which are part of the settlement made before Judge Sitarski – appear calculated only to delay this matter's resolution, exert his obvious need for control, further damage Plaintiff and his reputation in the art industry, and destroy the settlement. See Nicholas Declaration, ¶22.

31. Because Defendant has not complied with his obligation to close the settlement agreed to before Judge Sitarski, Plaintiff now seeks the intervention of this Court to compel

Defendant to do so – and without the additional, unreasonable conditions that Defendant has attempted to impose.

      32.     Additionally, because of Defendant's transparent bad faith in connection with the settlement, Plaintiff also respectfully requests that the Court award Plaintiff his fees and costs in this matter from June 15 through September 13, 2023.

      I declare under the penalty of perjury that the foregoing statements made by me are true and correct.

*/s/Jonathan P. Vuotto*

Dated: September 13, 2023                                        Jonathan P. Vuotto

# EXHIBIT 1

| | |
|---|---|
| **From:** | Jonathan Vuotto |
| **To:** | "Bryan A.George,Esq." |
| **Subject:** | Nicholas v. Plastino - settlement agreement |
| **Date:** | Monday, June 19, 2023 3:27:00 PM |
| **Attachments:** | 2023-06-19 - Settlement Agreement - Nicholas-Plastino.docx |
| | Stipulation of dismissal - Nicholas-Plastino.docx |

Bryan,

Please see the attached draft settlement agreement and let me know any comments or requested changes. Also attached is a stipulation of dismissal to be attached as Exhibit A.

Jonathan P. Vuotto, Esq.
McANDREW VUOTTO, LLC
13 Mt. Kemble Avenue
Morristown, New Jersey 07960
Direct: (973) 532-6242
Fax: (973) 538-2103
www.mcandrewvuotto.com

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

## <u>SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE</u>

This Settlement Agreement and Mutual Release (hereinafter, the "Settlement Agreement") is entered into by and between SEAN T. NICHOLAS (hereinafter "Plaintiff"), and DAVID A. PLASTINO (hereinafter "Defendant") (hereinafter collectively, "the Parties") resolving the disputes between the Parties without the need for further litigation.

**WHEREAS**, on March 31, 2023, Plaintiff filed a Complaint against Defendant in the United States District Court for the Eastern District of Pennsylvania, which case was assigned Case No. 23-cv-1259 (the "Litigation") relating to Plaintiff's claims against Defendant regarding certain artwork and a certain Agreement Between Sean T. Nicholas and David A. Plastino to Settle All Claims Between the Parties Concerning the Art Listed in this Agreement (the "Art Collateral Agreement") ; and

**WHEREAS**, on June 5, 2023, Defendant filed an Answer to Plaintiff's Complaint with Affirmative Defenses and Counterclaim; and

**WHEREAS**, the Parties met by Zoom on June 14 and again on June 15, 2023, and with the assistance of Hon. Lynne A. Sitarski, U.S.M.J., agreed to the principal terms to resolve all disputes and claims between them without the burden and expense of litigating the merits of the matters at hand, and without any party admitting the validity of the claims or defenses of the other;

**NOW THEREFORE**, in consideration of the mutual promises contained herein and for good and valuable consideration as set forth herein, the Parties agree as follows:

1.  <u>Delivery of Titus Kaphar Work for Auction</u>.  Within three (3) business days of the execution of this Settlement Agreement, Defendant shall arrange for the pickup and delivery of the Titus Kaphar original oil and tar work "The Children," 2012 referenced in the Collateral Art Agreement (the "Titus Kaphar"), directly to an auction house in New York of Plaintiff's choosing,

by a professional, insured art handler. The art handler shall be procured by Defendant, who shall use Crozier, UOVO, Mana, Fine Art Shippers, or another professional art handler approved by Plaintiff (the selected handler shall be referred to as the "Art Handler").

2. <u>Sale of Titus Kaphar and Settlement Proceeds</u>. Plaintiff shall arrange with the auction house for the Titus Kaphar to be auctioned for sale beginning in or around September 2023. The Titus Kaphar shall remain with the auction house until successfully sold at auction. The net proceeds of sale of the Titus Kaphar (i.e., after payment of the auction house's commission) (the "Settlement Proceeds") shall be distributed as follows: (i) the first $124,582 to Defendant; (ii) any Damages Costs, as defined below, to Plaintiff; and (iii) all remaining Settlement Proceeds shall be paid 60% to Plaintiff and 40% to Defendant. Plaintiff shall disburse the Settlement Proceeds in accordance with this Settlement Agreement within three (3) business days of receipt of the Settlement Proceeds from the auction house.

3. <u>Delivery of Remaining Art to Plaintiff</u>. Within three (3) business days of the execution of this Settlement Agreement, Defendant shall arrange for the pickup and delivery by the Art Handler to Plaintiff the remaining art referenced in the Collateral Art Agreement: (i) Shepard Fairey, print, portrait of a woman; (ii) Murakami, two posters, homage to Francis Bacon, study of Isabel Rawsthorne; (iii) Faile, print of a Madonna; (iv) Faile, print, dirty dancers, 50% off; (v) Faile, print, seduction of the mask; (vi) Dot Dot Dot, print, Napolean; (vii) Dot Dot Dot, print, "Handgun"; (viii) Judith Supine, print of neon colored woman with white glasses; (ix) Bast, print, Lady Gaga; (x) Miss Bugs, Geisha with surgical blades; (xi) Harlan Miller, don't let the bastards cheer you up; and (xii) Damian Hirst, Polka dots with white background (collectively, the "Remaining Art"). The Remaining Art shall be delivered to Plaintiff undamaged. If the Remaining Art is delivered to Plaintiff with damages, then Plaintiff shall have any such damages

assessed by a third-party restorer with reasonable experience in the art industry, and the value of any such damages as estimated by the third-party restorer (the "Damages Costs") shall be disbursed to Plaintiff from the Settlement Proceeds in accordance with Section 2 hereof.

4.     <u>Payment of Any Shortfall</u>.  If the Settlement Proceeds are less than $124,582, then Plaintiff shall pay Defendant the difference between the Settlement Proceeds and $124,582 within thirty (30) days of the disbursement of the Settlement Proceeds.

5.     <u>Tax Obligations</u>.  The Parties agree that they shall each be completely responsible for any and all of their own respective tax obligations arising from the matters set forth in this Settlement Agreement, and that neither shall have recourse to the other in connection with any tax obligation arising from the matters set forth herein.

6.     <u>Dismissal of Litigation</u>.  Upon full execution of this Agreement by the Parties, Plaintiff's counsel shall execute and file a Stipulation of Dismissal with Prejudice of the Litigation in the form attached hereto as **Exhibit A**.

7.     <u>Release from Plaintiff to Defendant</u>.  Plaintiff, on behalf of himself and on behalf of his present and former heirs, executors, administrators, partners, co-obligors, sureties, spouses, attorneys, insurers, agents, trustees, representatives, predecessors, successors, assigns and all those who claim through them or could claim through them (the "Plaintiff Releasors"), hereby fully, finally and forever releases, settles, remises, acquits, relinquishes, and discharges Defendant, on behalf of himself and on behalf of his present and former heirs, executors, administrators, partners, co-obligors, sureties, spouses, attorneys, insurers, agents, trustees, representatives, predecessors, successors, assigns and all those who claim through them or could claim through them (the "Defendant Releasees"), for and from any and all claims (including cross-claims, counterclaims, third-party claims or fourth-party claims), actions, causes of action, allegations, controversies,

suits, rights, obligations, debts, demands, agreements, promises, liabilities, damages, and disputes of any kind or nature, including but not limited to compensatory, consequential, punitive or exemplary damages, statutory damages, treble damages, claims for indemnification, contribution, or statutory rights or violations, claims for interest, costs or attorneys' fees, sanctions, judgments, losses, charges, and complaints whatsoever, of every kind, nature and description, under any law of any jurisdiction, whether at law, in equity or otherwise, whether based on statute, regulations, common law, civil law or any other type, form or right of action, and whether foreseen or unforeseen, actual or potential, matured or unmatured, contingent or liquidated, known or unknown, or accrued or not accrued, of every kind and nature, from the beginning of time to the date of execution of this Agreement that the Plaintiff Releasors have, may have, and have ever had against the Defendant Releasees.

8.      <u>Release from Defendant to Plaintiff</u>.  Defendant, on behalf of himself, his present and former heirs, executors, administrators, partners, co-obligors, sureties, spouses, attorneys, insurers, agents, trustees, representatives, predecessors, successors, assigns and all those who claim through them or could claim through them (the "Defendant Releasors"), hereby fully, finally and forever releases, settles, remises, acquits, relinquishes, and discharges Plaintiff, on behalf of himself and on behalf of his present and former heirs, executors, administrators, partners, co-obligors, sureties, spouses, attorneys, insurers, agents, trustees, representatives, predecessors, successors, assigns and all those who claim through them or could claim through them (the "Plaintiff Releasees"), for and from any and all claims (including cross-claims, counterclaims, third-party claims or fourth-party claims), actions, causes of action, allegations, controversies, suits, rights, obligations, debts, demands, agreements, promises, liabilities, damages, and disputes of any kind or nature, including but not limited to compensatory, consequential, punitive or

exemplary damages, statutory damages, treble damages, claims for indemnification, contribution, or statutory rights or violations, claims for interest, costs or attorneys' fees, sanctions, judgments, losses, charges, and complaints whatsoever, of every kind, nature and description, under any law of any jurisdiction, whether at law, in equity or otherwise, whether based on statute, regulations, common law, civil law or any other type, form or right of action, and whether foreseen or unforeseen, actual or potential, matured or unmatured, contingent or liquidated, known or unknown, or accrued or not accrued, of every kind and nature, from the beginning of time to the date of execution of this Agreement that the Defendant Releasors have, may have, and has ever had against the Plaintiff Releasees.

9. <u>No Admission; Denial of Liability</u>. The Parties acknowledge and agree that this Agreement shall not be construed as an express or implied admission of wrongdoing, misconduct, responsibility, or violation of any kind including of any law, rule, regulation, public policy or contractual provision, or any liability whatsoever on the part of any Party or of anyone else, and the Parties expressly and specifically deny all such admissions. Rather, it is acknowledged and agreed that this Settlement Agreement has been entered into solely for the purpose of settling the dispute between them and to avoid the expense and uncertainty of litigation.

10. <u>Non-Disparagement</u>. The Parties shall not make or publish any non-truthful disparaging or defamatory communication or statement which has the purpose of causing, or which by natural consequences causes, injury or damage to the reputation of, any other Party, or any of their respective parents, subsidiaries, affiliates, officers, directors, shareholders, trustees, governing boards, members, employees, agents, attorneys, predecessors, successors and assigns, relating to the specific claims and defenses settled pursuant to this Settlement Agreement. Notwithstanding the forgoing, this Settlement Agreement does not prohibit the Parties or their

respective attorneys or agents, from cooperating with, participating in or testifying truthfully in connection with investigations initiated by government agencies, administrative proceedings, criminal litigation or civil litigation in compliance with legal requirements or in response to legal process, order or mandate.

11.     This Agreement Not Released.   The releases provided for in this Settlement Agreement shall not apply to, waive or release any claim for breach or enforcement of the terms of this Settlement Agreement, nor shall the Stipulation of Dismissal with Prejudice be any bar to the Parties asserting and/or defending their respective rights under this Settlement Agreement.

12.     Mutual Representations and Warranties.  Each of Plaintiff and Defendant represent, warrant, and agree that:

(a) He did not and does not rely upon any statement, representation, or promise of any other Party in executing this Settlement Agreement, with the exception of the statements, representations, or promises expressly set forth in this Agreement;

(b)     He has full and complete authority to enter into and execute this Settlement Agreement;

(c)     He has been represented by the counsel of his choice and fully understands the terms and conditions of this Settlement Agreement;

(d)     He has not assigned or otherwise transferred to any other person or entity any of the claims or defenses being released in this Settlement Agreement; and

(e)     This Settlement Agreement is the product of mutual negotiation and compromise and was drafted jointly by each of the Parties and their respective attorneys, so that no statutory, common law or other presumption shall operate in favor of or against any Party hereto by virtue of its role in drafting or not drafting the terms and conditions of this Settlement Agreement.

13.     <u>Entire Agreement</u>.  This Agreement represents the complete understanding of each of the Parties.  This Settlement Agreement may not be modified, amended, or waived, in whole or in part, except in an executed written agreement stating the specific intent to modify, amend, or waive this Settlement Agreement.  Any date required by this Settlement Agreement may be modified by the written agreement of counsel for the Parties, with an exchange of emails or similar correspondence being sufficient.

14.     <u>Construction</u>.  If, at any time after the date of the execution of this Settlement Agreement, any provision of this Agreement shall be held to be illegal, void or unenforceable by a court of competent jurisdiction, such provision shall be of no force and effect.  However, the illegality or unenforceability of such provisions shall have no effect upon, and shall not impair the enforceability of, any other provision of this Settlement Agreement.

15.     <u>Governing Law; Venue</u>.  The validity, construction, and performance of this Settlement Agreement shall be governed by and construed in accordance with the laws of the State of New York, exclusive of its choice of law rules.  Any claim or dispute arising from or relating to this Settlement Agreement shall be litigated in any court with competent jurisdiction located in the State and County of New York.

16.     <u>Attorneys' Fees</u>.  In the event any litigation arises from a breach of this Settlement Agreement, the prevailing party, as determined by court order, shall be entitled to recover from the other party all reasonable costs incurred in such litigation and obtaining such court order, including but not limited to, court costs, filing fees, and attorney fees.

17.     <u>Successors and Assigns</u>: The provisions of this Agreement shall be binding upon the Parties hereto and their respective heirs, predecessors, successors or assigns.

18.     Captions.  Captions or headings used in this Settlement Agreement are for the convenience of the Parties only, and shall not be considered part of this Agreement or used to construe the terms of this Settlement Agreement.

19.     Authorized Signatories:  The person executing this Settlement Agreement on behalf of each respective Party expressly warrants and represents that he/she is duly authorized to do so in a manner that is fully binding upon such Party.

20.     Counterparts.  This Settlement Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and which when fully executed by all Parties shall together constitute one and the same instrument.  Copies of signatures delivered electronically (*e.g.*, by fax, email, etc.) shall be deemed to be original ink signatures.

**IN WITNESS WHEREOF**, and intending to be bound thereby, the Parties have each set their hands and seals as of the first date signed by the parties below.


ACCEPTED BY:                                    ACCEPTED BY:


By:_____        By:_____
        SEAN T. NICHOLAS                           DAVID A. PLASTINO

Dated: June __, 2023                         Dated: June __, 2023

Jonathan P. Vuotto, Attorney No. 021372004
McANDREW VUOTTO, LLC
13 Mt. Kemble Avenue
Morristown, New Jersey 07960
(973) 538-6308
Attorneys for Plaintiff, Sean T. Nicholas

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SEAN T. NICHOLAS,<br><br>               Plaintiff,<br><br>   v.<br><br>DAVID A. PLASTINO,<br><br>               Defendant. | Case No. 23-cv-1259<br><br><br><br>**STIPULATION OF DISMISSAL<br>WITH PREJUDICE** |

**IT IS HEREBY STIPULATED AND AGREED** by and among the undersigned counsel for all parties appearing in this action that, pursuant to the Settlement Agreement and Mutual General Release between the parties, the above-captioned action is hereby dismissed with prejudice and without costs or fees to any party.

**IT IS FURTHER STIPULATED AND AGREED** that the parties may execute this stipulation in counterparts and by facsimile or electronic means.

McANDREW VUOTTO, LLC
Attorneys for Plaintiff

By:_____
      Jonathan P. Vuotto
      13 Mt. Kemble Ave.
      Morristown, NJ 07960
      (973) 538-6308

BRYAN A. GEORGE, ESQ.
Attorney for Defendant

By:_____
      Bryan A. George
      1011 West Avenue
      Ocean City, NJ 08226
      (609) 391-8056

Dated: June __, 2023

# EXHIBIT 2

Bryan:

I spoke with Sean about the three items you presented to me this morning:

1. Inspecting the art. Sean cannot come to Pennsylvania right now. Please have David provide pictures of all the works. About the Titus Kaphar, Sean said that it was not broken or in two pieces when it was hanging on the wall of his home. We will review the pictures and then take it from there. Please provide the pictures as soon as possible so we can keep this moving (by tomorrow would be preferable).
2. Disbursement of settlement proceeds. Sean is ok with either me or you disbursing the proceeds from an attorney trust account.
3. Cost of transportation. As anticipated, Sean will not agree to this coming from the settlement proceeds – David took the art, he can pay to send it back.

Please let me know if you would like to further discuss this matter.

Jonathan P. Vuotto, Esq.
McANDREW VUOTTO, LLC
13 Mt. Kemble Avenue
Morristown, New Jersey 07960
Direct: (973) 532-6242
Fax: (973) 538-2103
www.mcandrewvuotto.com

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

**From:** Jonathan Vuotto
**Sent:** Monday, June 19, 2023 3:28 PM
**To:** 'Bryan A.George,Esq.' <bryanageorge@verizon.net>
**Subject:** Nicholas v. Plastino - settlement agreement

Bryan,

Please see the attached draft settlement agreement and let me know any comments or requested changes. Also attached is a stipulation of dismissal to be attached as Exhibit A.

Jonathan P. Vuotto, Esq.
McANDREW VUOTTO, LLC

13 Mt. Kemble Avenue
Morristown, New Jersey 07960
Direct: (973) 532-6242
Fax: (973) 538-2103
www.mcandrewvuotto.com

---

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

# EXHIBIT 3

Bryan,

We are not comfortable waiting much longer and therefore need to receive these photos by Friday or we feel we have no other reasonable choice but to submit an application to reopen this case. Please advise.

Jonathan P. Vuotto, Esq.
McANDREW VUOTTO, LLC
13 Mt. Kemble Avenue
Morristown, New Jersey 07960
Direct: (973) 532-6242
Fax: (973) 538-2103
www.mcandrewvuotto.com

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

**From:** Bryan A.George,Esq. <bryanageorge@verizon.net>
**Sent:** Monday, June 26, 2023 4:54 PM
**To:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Subject:** Re: Nicholas v. Plastino - settlement agreement

He is going to be sending me photos for Shawn to review.I think he is away this week.

# Bryan A. George, Esquire

On Monday, June 26, 2023 at 01:19:28 PM EDT, Jonathan Vuotto <jpv@mcandrewvuotto.com> wrote:

Bryan,

Following up.  Please let me know if David will be providing pictures and if we can proceed to execute the settlement agreement.

Jonathan P. Vuotto, Esq.

McANDREW VUOTTO, LLC

13 Mt. Kemble Avenue

Morristown, New Jersey 07960

Direct: (973) 532-6242

Fax: (973) 538-2103

[www.mcandrewvuotto.com](www.mcandrewvuotto.com)

---

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system. Thank You.

---

**From:** Bryan A.George,Esq. <[bryanageorge@verizon.net](mailto:bryanageorge@verizon.net)>
**Sent:** Thursday, June 22, 2023 10:56 AM
**To:** Jonathan Vuotto <[jpv@mcandrewvuotto.com](mailto:jpv@mcandrewvuotto.com)>
**Subject:** Re: Nicholas v. Plastino - settlement agreement

I will talk to David and get back to you.

# Bryan A. George, Esquire

On Thursday, June 22, 2023 at 10:45:49 AM EDT, Jonathan Vuotto <[jpv@mcandrewvuotto.com](mailto:jpv@mcandrewvuotto.com)> wrote:

Bryan:

I spoke with Sean about the three items you presented to me this morning:

> 1.  Inspecting the art.  Sean cannot come to Pennsylvania right now.  Please have David provide pictures of all the works.  About the Titus Kaphar, Sean said that it was not broken or in two pieces when it was hanging on the wall of his home.  We will review the pictures and then take it from there.  Please provide the pictures as soon as possible so we can keep this moving (by tomorrow would be preferable).

2. Disbursement of settlement proceeds. Sean is ok with either me or you disbursing the proceeds from an attorney trust account.

3. Cost of transportation. As anticipated, Sean will not agree to this coming from the settlement proceeds – David took the art, he can pay to send it back.


Please let me know if you would like to further discuss this matter.


Jonathan P. Vuotto, Esq.

McANDREW VUOTTO, LLC

13 Mt. Kemble Avenue

Morristown, New Jersey 07960

Direct: (973) 532-6242

Fax: (973) 538-2103

www.mcandrewvuotto.com

---

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

---

**From:** Jonathan Vuotto
**Sent:** Monday, June 19, 2023 3:28 PM
**To:** 'Bryan A.George,Esq.' <bryanageorge@verizon.net>
**Subject:** Nicholas v. Plastino - settlement agreement


Bryan,


Please see the attached draft settlement agreement and let me know any comments or requested changes. Also attached is a stipulation of dismissal to be attached as Exhibit A.


Jonathan P. Vuotto, Esq.

McANDREW VUOTTO, LLC

13 Mt. Kemble Avenue

Morristown, New Jersey 07960

Direct: (973) 532-6242

Fax: (973) 538-2103

[www.mcandrewvuotto.com](www.mcandrewvuotto.com)

---

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

# EXHIBIT 4

| From: | Jonathan Vuotto |
|---|---|
| To: | "Bryan A.George,Esq." |
| Subject: | RE: Titus Kaphar |
| Date: | Friday, July 7, 2023 10:31:00 AM |
| Attachments: | 2023-07-07 - Settlement Agreement - Nicholas-Plastino.docx |
| | 2023-07-07 - Settlement Agreement clean.pdf |

Bryan:

Please see the attached revised settlement agreement, with the revisions in the Word version and clean in PDF. Sean is ready to sign and get moving on this. He is ok with you receiving the settlement proceeds in your trust account and disbursing them from there. Please let me know if there is anything else we need to resolve. Otherwise, please have David sign the agreement and I will have Sean sign and send it to you later today.

Jonathan P. Vuotto, Esq.
McANDREW VUOTTO, LLC
13 Mt. Kemble Avenue
Morristown, New Jersey 07960
Direct: (973) 532-6242
Fax: (973) 538-2103
www.mcandrewvuotto.com

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

**From:** Bryan A.George,Esq. <bryanageorge@verizon.net>
**Sent:** Friday, July 7, 2023 7:27 AM
**To:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Subject:** Re: Titus Kaphar

That is a piece of the frame from the T.K.

# Bryan A. George, Esquire

On Thursday, July 6, 2023 at 08:38:24 PM EDT, Jonathan Vuotto <jpv@mcandrewvuotto.com> wrote:

The Titus Kaphar pictures, which were second. The first picture, with the writing on it.

Jonathan P. Vuotto, Esq.

McANDREW VUOTTO, LLC

13 Mt. Kemble Avenue

Morristown, New Jersey 07960

Direct: (973) 532-6242

Fax: (973) 538-2103

[www.mcandrewvuotto.com](http://www.mcandrewvuotto.com)

---

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system. Thank You.

---

**From:** bryanageorge <[bryanageorge@verizon.net](mailto:bryanageorge@verizon.net)>
**Sent:** Thursday, July 6, 2023 8:27 PM
**To:** Jonathan Vuotto <[jpv@mcandrewvuotto.com](mailto:jpv@mcandrewvuotto.com)>
**Subject:** RE: Titus Kaphar

First set or second set

Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------

From: Jonathan Vuotto <[jpv@mcandrewvuotto.com](mailto:jpv@mcandrewvuotto.com)>

Date: 7/6/23 7:41 PM (GMT-05:00)

To: "Bryan A.George,Esq." <[bryanageorge@verizon.net](mailto:bryanageorge@verizon.net)>

Subject: RE: Titus Kaphar

Bryan:

What is the first picture, with the writing on it?

Jonathan P. Vuotto, Esq.

McANDREW VUOTTO, LLC

13 Mt. Kemble Avenue

Morristown, New Jersey 07960

Direct: (973) 532-6242

Fax: (973) 538-2103

[www.mcandrewvuotto.com](http://www.mcandrewvuotto.com)

---

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system. Thank You.

---

**From:** Bryan A.George,Esq. <bryanageorge@verizon.net>
**Sent:** Thursday, July 6, 2023 4:33 PM
**To:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Subject:** Fw: Titus Kaphar

Attached are the photos of the Titus Kaphar

**Bryan A. George, Esquire**

----- Forwarded Message -----

**From:** DAVID PLASTINO <dplas@comcast.net>

**To:** Bryan A.George,Esq. <bryanageorge@verizon.net>

**Sent:** Thursday, July 6, 2023 at 03:43:36 PM EDT

**Subject:** Fwd: Titus Kaphar

Hi Bryan,

Here are the Titus Kaphar photos.

Regards

Dave

> ---------- Original Message ----------

> From: David Plastino <[sorrellpartners@gmail.com](mailto:sorrellpartners@gmail.com)>

> To: Dap <[dplas@comcast.net](mailto:dplas@comcast.net)>

> Date: 07/06/2023 3:34 PM EDT

> Subject: Titus Kaphar

>

>

> Sent from my iPhone

<u>**SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE**</u>

This Settlement Agreement and Mutual Release (hereinafter, the "Settlement Agreement") is entered into by and between SEAN T. NICHOLAS (hereinafter "Plaintiff"), and DAVID A. PLASTINO (hereinafter "Defendant") (hereinafter collectively, "the Parties") resolving the disputes between the Parties without the need for further litigation.

**WHEREAS**, on March 31, 2023, Plaintiff filed a Complaint against Defendant in the United States District Court for the Eastern District of Pennsylvania, which case was assigned Case No. 23-cv-1259 (the "Litigation") relating to Plaintiff's claims against Defendant regarding certain artwork and a certain Agreement Between Sean T. Nicholas and David A. Plastino to Settle All Claims Between the Parties Concerning the Art Listed in this Agreement (the "Art Collateral Agreement") ; and

**WHEREAS**, on June 5, 2023, Defendant filed an Answer to Plaintiff's Complaint with Affirmative Defenses and Counterclaim; and

**WHEREAS**, the Parties met by Zoom on June 14 and again on June 15, 2023, and with the assistance of Hon. Lynne A. Sitarski, U.S.M.J., agreed to the principal terms to resolve all disputes and claims between them without the burden and expense of litigating the merits of the matters at hand, and without any party admitting the validity of the claims or defenses of the other;

**NOW THEREFORE**, in consideration of the mutual promises contained herein and for good and valuable consideration as set forth herein, the Parties agree as follows:

1.      <u>Delivery of Titus Kaphar Work for Auction</u>.  Within three (3) business days of the execution of this Settlement Agreement, Defendant shall arrange for the pickup and delivery of the Titus Kaphar original oil and tar work "The Children," 2012 referenced in the Collateral Art Agreement (the "Titus Kaphar"), directly to an auction house in New York of Plaintiff's choosing,

by a professional, insured art handler.  The art handler shall be procured by Defendant, who shall use Crozier, UOVO, Mana, Fine Art Shippers, or another professional art handler approved by Plaintiff (the selected handler shall be referred to as the "Art Handler").

2. <u>Sale of Titus Kaphar and Settlement Proceeds</u>.  Plaintiff shall arrange with the auction house for the Titus Kaphar to be auctioned for sale beginning in or around September 2023.  The Titus Kaphar shall remain with the auction house until successfully sold at auction. The net proceeds of sale of the Titus Kaphar (i.e., after payment of the auction house's commission) (the "Settlement Proceeds") shall be distributed as follows: (i) the first $124,582 to Defendant; (ii) any Damages Costs, as defined below, to Plaintiff; and (iii) all remaining Settlement Proceeds shall be paid 60% to Plaintiff and 40% to Defendant.  ~~Plaintiff shall disburse tT~~he Settlement Proceeds <u>shall be disbursed</u> in accordance with this Settlement Agreement within three (3) business days of receipt of the Settlement Proceeds from the auction house.

3. <u>Delivery of Remaining Art to Plaintiff</u>.  Within three (3) business days of the execution of this Settlement Agreement, Defendant shall arrange for the pickup and delivery by the Art Handler to Plaintiff<u>, at 55 Delancey Street, New York, New York 10002,</u> the remaining art referenced in the Collateral Art Agreement: (i) Shepard Fairey, print, portrait of a woman; (ii) Murakami, two posters, homage to Francis Bacon, study of Isabel Rawsthorne; (iii) Faile, print of a Madonna; (iv) Faile, print, dirty dancers, 50% off; (v) Faile, print, seduction of the mask; (vi) Dot Dot Dot, print, Napolean; (vii) Dot Dot Dot, print, "Handgun"; (viii) Judith Supine, print of neon colored woman with white glasses; (ix) Bast, print, Lady Gaga; (x) Miss Bugs, Geisha with surgical blades; (xi) Harlan Miller, don't let the bastards cheer you up; and (xii) Damian Hirst, Polka dots with white background (collectively, the "Remaining Art").  The Remaining Art shall be delivered to Plaintiff undamaged.  If the Remaining Art is delivered to Plaintiff with damages,

then Plaintiff shall have any such damages assessed by a third-party restorer with reasonable experience in the art industry, and the value of any such damages as estimated by the third-party restorer (the "Damages Costs") shall be disbursed to Plaintiff from the Settlement Proceeds in accordance with Section 2 hereof.

4.      <u>Payment of Any Shortfall</u>.  If the Settlement Proceeds are less than \$124,582, then Plaintiff shall pay Defendant the difference between the Settlement Proceeds and \$124,582 within thirty (30) days of the disbursement of the Settlement Proceeds.

5.      <u>Tax Obligations</u>.  The Parties agree that they shall each be completely responsible for any and all of their own respective tax obligations arising from the matters set forth in this Settlement Agreement, and that neither shall have recourse to the other in connection with any tax obligation arising from the matters set forth herein.

6.      <u>Dismissal of Litigation</u>.  Upon full execution of this Agreement by the Parties, Plaintiff's counsel shall execute and file a Stipulation of Dismissal with Prejudice of the Litigation in the form attached hereto as **Exhibit A**.

7.      <u>Release from Plaintiff to Defendant</u>.  Plaintiff, on behalf of himself and on behalf of his present and former heirs, executors, administrators, partners, co-obligors, sureties, spouses, attorneys, insurers, agents, trustees, representatives, predecessors, successors, assigns and all those who claim through them or could claim through them (the "Plaintiff Releasors"), hereby fully, finally and forever releases, settles, remises, acquits, relinquishes, and discharges Defendant, on behalf of himself and on behalf of his present and former heirs, executors, administrators, partners, co-obligors, sureties, spouses, attorneys, insurers, agents, trustees, representatives, predecessors, successors, assigns and all those who claim through them or could claim through them (the "Defendant Releasees"), for and from any and all claims (including cross-claims, counterclaims,

third-party claims or fourth-party claims), actions, causes of action, allegations, controversies, suits, rights, obligations, debts, demands, agreements, promises, liabilities, damages, and disputes of any kind or nature, including but not limited to compensatory, consequential, punitive or exemplary damages, statutory damages, treble damages, claims for indemnification, contribution, or statutory rights or violations, claims for interest, costs or attorneys' fees, sanctions, judgments, losses, charges, and complaints whatsoever, of every kind, nature and description, under any law of any jurisdiction, whether at law, in equity or otherwise, whether based on statute, regulations, common law, civil law or any other type, form or right of action, and whether foreseen or unforeseen, actual or potential, matured or unmatured, contingent or liquidated, known or unknown, or accrued or not accrued, of every kind and nature, from the beginning of time to the date of execution of this Agreement that the Plaintiff Releasors have, may have, and have ever had against the Defendant Releasees.

8.    Release from Defendant to Plaintiff.  Defendant, on behalf of himself, his present and former heirs, executors, administrators, partners, co-obligors, sureties, spouses, attorneys, insurers, agents, trustees, representatives, predecessors, successors, assigns and all those who claim through them or could claim through them (the "Defendant Releasors"), hereby fully, finally and forever releases, settles, remises, acquits, relinquishes, and discharges Plaintiff, on behalf of himself and on behalf of his present and former heirs, executors, administrators, partners, co-obligors, sureties, spouses, attorneys, insurers, agents, trustees, representatives, predecessors, successors, assigns and all those who claim through them or could claim through them (the "Plaintiff Releasees"), for and from any and all claims (including cross-claims, counterclaims, third-party claims or fourth-party claims), actions, causes of action, allegations, controversies, suits, rights, obligations, debts, demands, agreements, promises, liabilities, damages, and disputes

of any kind or nature, including but not limited to compensatory, consequential, punitive or exemplary damages, statutory damages, treble damages, claims for indemnification, contribution, or statutory rights or violations, claims for interest, costs or attorneys' fees, sanctions, judgments, losses, charges, and complaints whatsoever, of every kind, nature and description, under any law of any jurisdiction, whether at law, in equity or otherwise, whether based on statute, regulations, common law, civil law or any other type, form or right of action, and whether foreseen or unforeseen, actual or potential, matured or unmatured, contingent or liquidated, known or unknown, or accrued or not accrued, of every kind and nature, from the beginning of time to the date of execution of this Agreement that the Defendant Releasors have, may have, and has ever had against the Plaintiff Releasees.

9.      <u>No Admission; Denial of Liability</u>.  The Parties acknowledge and agree that this Agreement shall not be construed as an express or implied admission of wrongdoing, misconduct, responsibility, or violation of any kind including of any law, rule, regulation, public policy or contractual provision, or any liability whatsoever on the part of any Party or of anyone else, and the Parties expressly and specifically deny all such admissions.  Rather, it is acknowledged and agreed that this Settlement Agreement has been entered into solely for the purpose of settling the dispute between them and to avoid the expense and uncertainty of litigation.

10.     <u>Non-Disparagement</u>.  The Parties shall not make or publish any non-truthful disparaging or defamatory communication or statement which has the purpose of causing, or which by natural consequences causes, injury or damage to the reputation of, any other Party, or any of their respective parents, subsidiaries, affiliates, officers, directors, shareholders, trustees, governing boards, members, employees, agents, attorneys, predecessors, successors and assigns, relating to the specific claims and defenses settled pursuant to this Settlement Agreement.

Notwithstanding the forgoing, this Settlement Agreement does not prohibit the Parties or their respective attorneys or agents, from cooperating with, participating in or testifying truthfully in connection with investigations initiated by government agencies, administrative proceedings, criminal litigation or civil litigation in compliance with legal requirements or in response to legal process, order or mandate.

11.     This Agreement Not Released.   The releases provided for in this Settlement Agreement shall not apply to, waive or release any claim for breach or enforcement of the terms of this Settlement Agreement, nor shall the Stipulation of Dismissal with Prejudice be any bar to the Parties asserting and/or defending their respective rights under this Settlement Agreement.

12.     Mutual Representations and Warranties.  Each of Plaintiff and Defendant represent, warrant, and agree that:

(a) He did not and does not rely upon any statement, representation, or promise of any other Party in executing this Settlement Agreement, with the exception of the statements, representations, or promises expressly set forth in this Agreement;

(b)     He has full and complete authority to enter into and execute this Settlement Agreement;

(c)     He has been represented by the counsel of his choice and fully understands the terms and conditions of this Settlement Agreement;

(d)     He has not assigned or otherwise transferred to any other person or entity any of the claims or defenses being released in this Settlement Agreement; and

(e)     This Settlement Agreement is the product of mutual negotiation and compromise and was drafted jointly by each of the Parties and their respective attorneys, so that no statutory,

common law or other presumption shall operate in favor of or against any Party hereto by virtue of its role in drafting or not drafting the terms and conditions of this Settlement Agreement.

13.     <u>Entire Agreement</u>.  This Agreement represents the complete understanding of each of the Parties.  This Settlement Agreement may not be modified, amended, or waived, in whole or in part, except in an executed written agreement stating the specific intent to modify, amend, or waive this Settlement Agreement.  Any date required by this Settlement Agreement may be modified by the written agreement of counsel for the Parties, with an exchange of emails or similar correspondence being sufficient.

14.     <u>Construction</u>.  If, at any time after the date of the execution of this Settlement Agreement, any provision of this Agreement shall be held to be illegal, void or unenforceable by a court of competent jurisdiction, such provision shall be of no force and effect.  However, the illegality or unenforceability of such provisions shall have no effect upon, and shall not impair the enforceability of, any other provision of this Settlement Agreement.

15.     <u>Governing Law; Venue</u>.  The validity, construction, and performance of this Settlement Agreement shall be governed by and construed in accordance with the laws of the State of New York, exclusive of its choice of law rules.  Any claim or dispute arising from or relating to this Settlement Agreement shall be litigated in any court with competent jurisdiction located in the State and County of New York.

16.     <u>Attorneys' Fees</u>.  In the event any litigation arises from a breach of this Settlement Agreement, the prevailing party, as determined by court order, shall be entitled to recover from the other party all reasonable costs incurred in such litigation and obtaining such court order, including but not limited to, court costs, filing fees, and attorney fees.

17. <u>Successors and Assigns</u>: The provisions of this Agreement shall be binding upon the Parties hereto and their respective heirs, predecessors, successors or assigns.

18. <u>Captions</u>. Captions or headings used in this Settlement Agreement are for the convenience of the Parties only, and shall not be considered part of this Agreement or used to construe the terms of this Settlement Agreement.

19. <u>Authorized Signatories</u>: The person executing this Settlement Agreement on behalf of each respective Party expressly warrants and represents that he/she is duly authorized to do so in a manner that is fully binding upon such Party.

20. <u>Counterparts</u>. This Settlement Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and which when fully executed by all Parties shall together constitute one and the same instrument. Copies of signatures delivered electronically (*e.g.*, by fax, email, etc.) shall be deemed to be original ink signatures.

**IN WITNESS WHEREOF**, and intending to be bound thereby, the Parties have each set their hands and seals as of the first date signed by the parties below.

ACCEPTED BY:                                    ACCEPTED BY:


By:_____          By:_____
         SEAN T. NICHOLAS                                 DAVID A. PLASTINO

Dated: ~~June~~ July ~~\_\_,~~ 7, 2023          Dated: ~~June~~ July \_\_, 2023

# EXHIBIT 5

Bryan – What is the status of the agreement?  Sean will likely choose Christie's, if David signs the agreement, which we are not confident of at this point.  We do not intend to wait much longer before applying to reopen the case.

Jonathan P. Vuotto, Esq.

McANDREW VUOTTO, LLC

13 Mt. Kemble Avenue

Morristown, New Jersey 07960

Direct: (973) 532-6242

Fax: (973) 538-2103

www.mcandrewvuotto.com

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

**From:** Bryan A.George,Esq. <bryanageorge@verizon.net>
**Sent:** Monday, July 10, 2023 3:12 PM
**To:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Subject:** Re: Agreement

I am waiting to hear from him.I had already left the office Friday when it came in.

# Bryan A. George, Esquire

On Monday, July 10, 2023 at 01:22:44 PM EDT, Jonathan Vuotto <jpv@mcandrewvuotto.com> wrote:

I reached out to Sean to ask, but, is David going to sign the agreement?  We need the agreement finalized and signed.

Jonathan P. Vuotto, Esq.

McANDREW VUOTTO, LLC

13 Mt. Kemble Avenue

Morristown, New Jersey 07960

Direct: (973) 532-6242

Fax: (973) 538-2103

[www.mcandrewvuotto.com](www.mcandrewvuotto.com)

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

---

**From:** Bryan A.George,Esq. <[bryanageorge@verizon.net](bryanageorge@verizon.net)>
**Sent:** Monday, July 10, 2023 1:13 PM
**To:** Jonathan Vuotto <[jpv@mcandrewvuotto.com](jpv@mcandrewvuotto.com)>
**Subject:** Agreement

What is the name of the auction house he wants to use?

**Bryan A. George, Esquire**

# EXHIBIT 6

Dear Mr. Vuotto

 Please see the attached letters.Sorry for the late response.

**Bryan A. George, Esquire**



**ATTORNEY AT LAW**
1011 WEST AVENUE
OCEAN CITY, NEW JERSEY 08226
609-391-8056
FAX (609) 391-7861
bryanageorge@verizon.net



MEMBER OF NJ
AND PA BARS

VIA EMAIL ONLY: jpv@mcandrewvuotto.com
Jonathan P. Vuotto, Esquire.
13 Mt. Kemble Avenue
Morristown, NJ 07960

July 14, 2023

RE:   Nicholas v. Plastino
      Case NO: 23-cv-1259
      My Client: David A. Plastino
      Amendment Letter & Proposed
      Settlement Agreement

Dear Mr. Vuotto:

I've had an opportunity to review the "Amended" Settlement Agreement and Mutual General Release. It is very similar to the original document, which was not acceptable to my client. My client will agree with the following changes:

1. The Titus Kaphar will be delivered to Christie's Auction House in New York. Preferably Christie's will pick the piece up at Mr. Plastino's residence. Should they not agree to pick the piece up at Mr. Plastino's residence, a mutually agreed upon transporter will be retained. The cost of transportation of the Titus Kaphar to Christie's will be equally born by the parties. This will be done within a reasonable time frame depending on the schedule of Christie's or the selected art handler. The piece will remain with Christie's until sold. Should they be unable to sell the piece, it will be returned to Mr. Plastino.

2. The parties will jointly arrange with Christie s for the auction of the Titus Kaphar. The parties agree to follow the recommendations of Christie's as to the timing of the auction. (Subparagraph ii) shall be deleted from paragraph two (2), the balance of paragraph two (2) is agreeable to Mr. Plastino;

3. Mr. Plastino, at a mutually agreed upon date and time will deliver the remaining artwork's to the Plaintiff at his residence. The remaining artwork's will be delivered in the condition as was depicted in the photographs which were forwarded to Plaintiff. s Counsel. Plaintiff will be present and will sign off indicating he accepts the artwork as delivered. Should the Plaintiff object to the condition of the artwork, Mr. Plastino will retain the artwork.

4. Paragraph number four (4) of the Agreement is acceptable to Mr. Plastino;
5. Paragraph number five (5) of the Agreement is acceptable to Mr. Plastino;
6. Paragraph number six (6) of the Agreement is acceptable to Mr. Plastino;
7 & 8. Paragraph seven (7) & paragraph eight (8) are Mutual Releases from Plaintiff to Defendant, and Defendant to Plaintiff to any and all claims existing up to the point and time of the signing of the Release. Mr. Plastino has brought to my attention that Defendant, Sean T. Nicholas, owes him seventy thousand ($70,000.00) dollars from a previous transaction. Sean T. Nicholas provided to David A. Plastino a series of art as guarantee for the seventy-thousand ($70,000.00) dollar payment. Mr. Nicholas has not made the payment, and it's Mr. Plastino's position that the artwork is now his. In exchange for the forgiveness of the seventy thousand ($70,000.00) dollar debt, Mr. Nicholas will provide to Mr. Plastino authentic and verified Providence documents;
9. Paragraph number nine (9) of the Agreement is acceptable to Mr. Plastino;
10. Paragraph number ten (10) of the Agreement is acceptable to Mr. Plastino;
11. Paragraph number eleven (11) of the Agreement is acceptable to Mr. Plastino;
12. Paragraph number twelve (12) of the Agreement is acceptable to Mr. Plastino;
13. Paragraph number thirteen (13) of the Agreement is acceptable to Mr. Plastino;
14. Paragraph number fourteen (14) of the Agreement is acceptable to Mr. Plastino;
15. Paragraph number fifteen (15) should be modified in that The Commonwealth of Pennsylvania should be substituted for The State and County of New York.
16. Paragraph number sixteen (16) of the Agreement should be deleted;
17. Paragraph number seventeen (17) of the Agreement is acceptable to Mr. Plastino;
18. Paragraph number eighteen (18) of the Agreement is acceptable to Mr. Plastino;
19. Paragraph number nineteen (19) of the Agreement is acceptable to Mr. Plastino; and
20. Paragraph number twenty (20) of the Agreement is acceptable to Mr. Plastino.

Once you have reviewed these modifications with Mr. Nicholas please advise. I will then have Mr. Plastino sign the Agreement along with a copy of this letter which will incorporate the above changes into the original Settlement Agreement.

Should there be any conflicts between the original Settlement Agreement and this "Amendment Letter" the terms and provisions of this this Amendment Letter shall be controlling. Along with the "Settlement Agreement" I will have a copy of this letter forwarded to your attention.

Hopefully, this will bring this matter to a conclusion.

Thank you for your time and attention to this matter.

Very truly yours,

Bryan A. George, Esquire

BAG/bg
Enclosures

It is the intention of the Parties that the terms contained within this "Amendment Letter" should be incorporated into and supersede any conflicting terms of the Settlement Agreement entered into between the parties.

Date:\_\_\_\_\_

_____
Sean T. Nicholas
Plaintiff

Date:\_\_\_\_\_

_____
David A. Plastino
Defendant



# *Bryan A. George*

ATTORNEY AT LAW
1011 WEST AVENUE
OCEAN CITY, NEW JERSEY 08226
609-391-8056
FAX (609) 391-7861
bryanageorge@verizon.net

MEMBER OF NJ
AND PA BARS

VIA EMAIL ONLY: jpv@mcandrewvuotto.com
Jonathan P. Vuotto, Esquire.
13 Mt. Kemble Avenue
Morristown, NJ 07960

July 14, 2023

RE:  Nicholas v. Plastino
     Case NO: 23-cv-1259

Dear Mr. Vuotto:

I am enclosing the Amendments to the Agreement which we are proposing. As I am sure Mr. Nicholas is, my client is growing weary of this situation. Due to the terms of the Mutual Releases, Mr. Plastino would prefer to resolve the other issue of the seventy thousand ($70,000.00) dollar loan at the same time.

It is Mr. Plastino's intention to comply with all of the provisions that were ironed out before Judge Sitarski, U.S.M.J. Should Mr. Nicholas not be willing to sign the Agreement and letter as modified, my client will be making arrangements to have the eight (8) pieces delivered to Mr. Nicholas's residence. He will also be making arrangements for Christie's to pick up the Titus Kaphar and hold it until the sale is completed as was agreed to by the parties.

The terms that you have inserted in the original Agreement were not agreed to with Judge Sitarski, U.S.M.J.

Alternatively, and only because of the way this is dragging out, Mr. Plastino has agreed to resolve this matter for a one-time lump sum cash payment. Please advise me of the figure that Mr. Nicholas would require to end this controversy.

This secondary provision would be contingent upon Mr. Nicholas providing authenticated Providence documents for any and all artwork referenced in the Settlement Agreement and "Amendment Letter"

Thank you for your time and attention to this matter.

Very truly yours,

Bryan A. George, Esquire

BAG/bg
Enclosures

# EXHIBIT 7

| | |
|---|---|
| **From:** | Jonathan Vuotto |
| **To:** | Bryan A.George,Esq. |
| **Subject:** | RE: Nichols v Plastino |
| **Date:** | Friday, July 14, 2023 5:14:00 PM |

Bryan:

Obviously, the statements in your letter about the "$70,000" allegedly owed by Mr. Nicholas are a surprise to us, since they seemingly come out of nowhere and were never raised in Mr. Plastino's pleading nor in the settlement conference nor at any other time, and we have no idea what you are talking about. Please explain. Otherwise, we will not have any settlement and we will be reopening the case next week.

Jonathan P. Vuotto, Esq.
McANDREW VUOTTO, LLC
13 Mt. Kemble Avenue
Morristown, New Jersey 07960
Direct: (973) 532-6242
Fax: (973) 538-2103
www.mcandrewvuotto.com

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

**From:** Bryan A.George,Esq. <bryanageorge@verizon.net>
**Sent:** Friday, July 14, 2023 4:39 PM
**To:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Subject:** Nichols v Plastino

Dear Mr. Vuotto

 Please see the attached letters.Sorry for the late response.

# Bryan A. George, Esquire



# EXHIBIT 8

Bryan:

Moving past the $70,000 item, Sean will arrange with the auction house and David has to get the Titus there, and the other works are to be delivered to the address we have in the agreement - 55 Delancey Street, New York, New York 10002 – not to Sean's residence.  If we are in agreement, then have David sign the agreement and then please email me a copy so we can proceed.  If we do not have the signed agreement by Thursday, then we will be applying to reopen the case on Friday.

Jonathan P. Vuotto, Esq.
McANDREW VUOTTO, LLC
13 Mt. Kemble Avenue
Morristown, New Jersey 07960
Direct: (973) 532-6242
Fax: (973) 538-2103
www.mcandrewvuotto.com

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

**From:** Bryan A.George,Esq. <bryanageorge@verizon.net>
**Sent:** Monday, July 17, 2023 8:11 AM
**To:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Subject:** Re: Nichols v Plastino

Jonathan:


   I hope you had a good weekend.Can I assume with the exception of the 70,000. issue that Sean is okay with the changes?I will then make the change you mentioned and return with David's signature.

## Bryan A. George, Esquire


On Friday, July 14, 2023 at 05:14:22 PM EDT, Jonathan Vuotto <jpv@mcandrewvuotto.com> wrote:


Bryan:

Obviously, the statements in your letter about the "$70,000" allegedly owed by Mr. Nicholas are a surprise to us, since they seemingly come out of nowhere and were never raised in Mr. Plastino's pleading nor in the settlement conference nor at any other time, and we have no idea what you are talking about.  Please explain.  Otherwise, we will not have any settlement and we will be reopening the case next week.


Jonathan P. Vuotto, Esq.

McANDREW VUOTTO, LLC

13 Mt. Kemble Avenue

Morristown, New Jersey 07960

Direct: (973) 532-6242

Fax: (973) 538-2103

www.mcandrewvuotto.com

---

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

---

**From:** Bryan A.George,Esq. <bryanageorge@verizon.net>
**Sent:** Friday, July 14, 2023 4:39 PM
**To:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Subject:** Nichols v Plastino


Dear Mr. Vuotto


  Please see the attached letters.Sorry for the late response.


**Bryan A. George, Esquire**

# EXHIBIT 9

Bryan,

Following up on our conversation from yesterday, you told me that there was an $80,000 loan from David that was secured by 5-6 works, and that David now wants the provenance documents for those 5-6 works in exchange for "walking away" from the works that are the subject of Sean's lawsuit – the Titus Kaphar and the other works referenced in the complaint.  This means that, if Sean can provide the provenance documents for the other 5-6 works, Sean would arrange to have the lawsuit-related works picked up at David's residence, no money would change hands and the parties would exchange full mutual releases and that would be the end of the dispute.  Do I have that correct?

Assuming so, Sean still does not have a recollection of the loan David is referring to.  Can you provide the name/description of the 5-6 works and pictures of them?  Also, if there is any written agreement relating to the loan, whether a handwritten one or an email or any evidence whatsoever, can you provide that to us?

I know that you told me that you and David do not want to repeatedly hear about us moving to reopen the case, but we are not interested in letting this issue linger.  We want to move this to a resolution this week.  If you want me to re-write the settlement agreement so that it reflects the new terms David is proposing, then you have to let me know right away (and we need to understand exactly what Sean is supposed to be giving to David).  Please let me know.

Jonathan P. Vuotto, Esq.
McANDREW VUOTTO, LLC
13 Mt. Kemble Avenue
Morristown, New Jersey 07960
Direct: (973) 532-6242
Fax: (973) 538-2103
www.mcandrewvuotto.com

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

**From:** Jonathan Vuotto
**Sent:** Monday, July 17, 2023 9:14 AM
**To:** Bryan A.George,Esq. <bryanageorge@verizon.net>
**Subject:** RE: Nichols v Plastino

Bryan:

Moving past the $70,000 item, Sean will arrange with the auction house and David has to get the Titus there, and the other works are to be delivered to the address we have in the agreement - 55 Delancey Street, New York, New York 10002 – not to Sean's residence.  If we are in agreement, then have David sign the agreement and then please email me a copy so we can proceed.  If we do not have the signed agreement by Thursday, then we will be applying to reopen the case on Friday.

Jonathan P. Vuotto, Esq.
McANDREW VUOTTO, LLC
13 Mt. Kemble Avenue
Morristown, New Jersey 07960
Direct: (973) 532-6242
Fax: (973) 538-2103
www.mcandrewvuotto.com

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

**From:** Bryan A.George,Esq. <bryanageorge@verizon.net>
**Sent:** Monday, July 17, 2023 8:11 AM
**To:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Subject:** Re: Nichols v Plastino

Jonathan:

   I hope you had a good weekend.Can I assume with the exception of the 70,000. issue that Sean is okay with the changes?I will then make the change you mentioned and return with David's signature.

**Bryan A. George, Esquire**

On Friday, July 14, 2023 at 05:14:22 PM EDT, Jonathan Vuotto <jpv@mcandrewvuotto.com> wrote:

Bryan:

Obviously, the statements in your letter about the "$70,000" allegedly owed by Mr. Nicholas are a surprise to us, since they seemingly come out of nowhere and were never raised in Mr. Plastino's pleading nor in the settlement conference nor at any other time, and we have no idea what you are talking about.  Please explain.  Otherwise, we will not have any settlement and we will be reopening the case next week.

Jonathan P. Vuotto, Esq.

McANDREW VUOTTO, LLC

13 Mt. Kemble Avenue

Morristown, New Jersey 07960

Direct: (973) 532-6242

Fax: (973) 538-2103

[www.mcandrewvuotto.com](www.mcandrewvuotto.com)

---

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

---

**From:** Bryan A.George,Esq. <[bryanageorge@verizon.net](mailto:bryanageorge@verizon.net)>
**Sent:** Friday, July 14, 2023 4:39 PM
**To:** Jonathan Vuotto <[jpv@mcandrewvuotto.com](mailto:jpv@mcandrewvuotto.com)>
**Subject:** Nichols v Plastino

Dear Mr. Vuotto

  Please see the attached letters.Sorry for the late response.

**<span style="color:red">Bryan A. George, Esquire</span>**

# EXHIBIT 10

Bryan:

We disagree with the statements in your email, but I don't want to waste time on this. Please let us know the names of the artists and the works. Can you get that information while David is away?

Jonathan P. Vuotto, Esq.
McANDREW VUOTTO, LLC
13 Mt. Kemble Avenue
Morristown, New Jersey 07960
Direct: (973) 532-6242
Fax: (973) 538-2103
www.mcandrewvuotto.com

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

**From:** Bryan A.George,Esq. <bryanageorge@verizon.net>
**Sent:** Tuesday, July 18, 2023 12:43 PM
**To:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Subject:** Fw: Nichols v Plastino

Good Afternoon Mr. Vuotto:

Thank you for your's of this morning.As I expressed to you yesterday the deadlines do not work.The promise (threat) of reopening the case is not getting us anywhere.As it stands now we are trying to work out the terms of the release our client's will be signing. I think your version does not reflect what was agreed to before the Judge. I think the version I sent to you is more in line with what was worked out before the Judge. Having said that the back and forth is getting tiring.The proposal of yesterday although not  what was agreed to in June does bring this saga to a quick clean resolution that will put a great deal more money in the hands of your client.
  David is out of town and will be returning next week.When he returns he will send photos of the art mentioned yesterday.He will try to get a copy of the check from the bank.That will not happen by the end of this week.The Court gives us ninety days to reopen the case. Assuming that is the path you choose to take what exactly do we say to the Judge?The other side refuses to abide by self imposed timeline?
  In the alternative have Shawn sign the release and my changes as set forth in my letter of July 14th .Cross out my
numbered 7&8 initial and send back.
  David's proposal of yesterday is a wind fall to your client.It gives him all the art

including the Titus and a pass on the 125,000. that he owes.

**Bryan A. George, Esquire.**

# EXHIBIT 11

Bryan:

Can you provide the names of the artists and works?  Why is this such difficult information to get?

Jonathan P. Vuotto, Esq.

McANDREW VUOTTO, LLC

13 Mt. Kemble Avenue

Morristown, New Jersey 07960

Direct: (973) 532-6242

Fax: (973) 538-2103

www.mcandrewvuotto.com

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

**From:** Jonathan Vuotto
**Sent:** Thursday, July 27, 2023 10:06 AM
**To:** Bryan A.George,Esq. <bryanageorge@verizon.net>
**Subject:** RE: Nichols v Plastino

Bryan:

What's the status?  Can you provide the names of the artists and works?

Jonathan P. Vuotto, Esq.

McANDREW VUOTTO, LLC

13 Mt. Kemble Avenue

Morristown, New Jersey 07960

Direct: (973) 532-6242

Fax: (973) 538-2103

www.mcandrewvuotto.com

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

**From:** Bryan A.George,Esq. <bryanageorge@verizon.net>
**Sent:** Wednesday, July 26, 2023 7:48 AM
**To:** Jonathan Vuotto <jpv@mcandrewvuotto.com>

**Subject:** Re: Nichols v Plastino

David gets back today ,I will have them to you shortly.

# Bryan A. George, Esquire

On Monday, July 24, 2023 at 05:29:38 PM EDT, Jonathan Vuotto <jpv@mcandrewvuotto.com> wrote:

Bryan:

Do you have the names of the artists and the works?

Jonathan P. Vuotto, Esq.

McANDREW VUOTTO, LLC

13 Mt. Kemble Avenue

Morristown, New Jersey 07960

Direct: (973) 532-6242

Fax: (973) 538-2103

www.mcandrewvuotto.com

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

**From:** Bryan A.George,Esq. <bryanageorge@verizon.net>
**Sent:** Tuesday, July 18, 2023 5:09 PM
**To:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Subject:** Re: Nichols v Plastino

I will check but I do not think so.

# Bryan A. George, Esquire

On Tuesday, July 18, 2023 at 04:56:10 PM EDT, Jonathan Vuotto <jpv@mcandrewvuotto.com> wrote:

Bryan:

We disagree with the statements in your email, but I don't want to waste time on this. Please let us know the names of the artists and the works. Can you get that information while David is away?

Jonathan P. Vuotto, Esq.

McANDREW VUOTTO, LLC

13 Mt. Kemble Avenue

Morristown, New Jersey 07960

Direct: (973) 532-6242

Fax: (973) 538-2103

www.mcandrewvuotto.com

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

**From:** Bryan A.George,Esq. <bryanageorge@verizon.net>
**Sent:** Tuesday, July 18, 2023 12:43 PM
**To:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Subject:** Fw: Nichols v Plastino

Good Afternoon Mr. Vuotto:

Thank you for your's of this morning.As I expressed to you yesterday the deadlines do not work.The promise (threat) of reopening the case is not getting us anywhere.As it stands now we are trying to work out the terms of the release our client's will be signing. I think your version does not reflect what was agreed to before the Judge. I think the version I sent to you is more in line with what was worked out before the

Judge. Having said that the back and forth is getting tiring.The proposal of yesterday although not  what was agreed to in June does bring this saga to a quick clean resolution that will put a great deal more money in the hands of your client.

   David is out of town and will be returning next week.When he returns he will send photos of the art mentioned yesterday.He will try to get a copy of the check from the bank.That will not happen by the end of this week.The Court gives us ninety days to reopen the case. Assuming that is the path you choose to take what exactly do we say to the Judge?The other side refuses to abide by self imposed timeline?

   In the alternative have Shawn sign the release and my changes as set forth in my letter of July 14th .Cross out my

numbered 7&8 initial and send back.

   David's proposal of yesterday is a wind fall to your client.It gives him all the art including the Titus and a pass on the 125,000. that he owes.

**Bryan A. George, Esquire.**

# EXHIBIT 12



**Bryan A. George**

ATTORNEY AT LAW

1011 WEST AVENUE

OCEAN CITY, NEW JERSEY 08226

609-391-8056
FAX (609) 391-7861
bryanageorge@verizon.net



MEMBER OF NJ
AND PA BARS

VIA EMAIL ONLY: jpv@mcandrewvuotto.com
Jonathan P. Vuotto, Esquire.                                    August 1, 2023
13 Mt. Kemble Avenue
Morristown, NJ 07960

RE:    Nicholas v. Plastino
       Case NO: 23-cv-1259
       My Client: David A. Plastino

Dear Mr. Vuotto:

I am enclosing two (2) separate lists and accompanying photos for your review. The first list begins with a work by Nick Farhi. There are eleven (11) works with accompanying photos. These are the works and photos that were given to David Plastino for the eighty thousand ($80,000.00) dollars.

The second list begins with a work from Damien Hirst and encompasses ten (10) works with accompanying photographs. These are the other works that Sean provided to David.

We are requesting Providence Documents for the attached works.

As I expressed to you before, once Sean provides the Providence Documents for the above-referenced works, the works which are the subject of the lawsuit including the Titus Kaphar will be Sean's. Sean will not pay David any funds. The one hundred and twenty-five thousand ($125,000.00) dollars along with any proceeds from the Titus Kaphar will be Sean's. Full and complete General Releases will be signed by both our clients.

Once you have conferred with Sean, please contact me to advise if he is able to provide the Providence Documents.

Thank you for your time and attention to this matter.

Very truly yours,

Bryan A. George, Esquire

BAG/bg
Enclosures

| Artist | Title and Description | Photo Included |
|---|---|---|
| | I | |
| Nick Farhi | Baby Loves Motown 56" round  oil on canvass | Y |
| Judith Supine | R.T.P. (Rushing to Paradise) 60"x48" acrylic and mixed media | Y |
| Matt Jones | Untitled(Wolverine) 36"x48" 2013 mixed paints with resin | Y |
| Bast and Paul Insect | Untitled 2014  9'x4'  2014 mixed media and acrylic on wood | Y |
| Dolk | "Suicide" | Y |
| Nick Darmstaedter | ??    60" x 48" | Photo of Box |
| Shepard Fairey | Fidel Castro Stencil | Y |
| Slinkachu | Fantanstic Voyage  large and small two framed photos | Y |
| Borf Rothko | print pastel orange and blue in frame | Y |
| Picasso | Flower arrangement print | Y |
| Mantis | Mushroom cloud | Y |

| Artist | _II_ Title of Piece | Photo Included |
|---|---|---|
| Damien Hirst | Dots on Black Background with diamond glitter | Y |
| Jeanette Hayes | Exodus | Y |
| Kepa Garza | Aggression 7- Pinchuk Art Center | Y |
| Brad Phillips | Commission piece-toilet paper roll | Y |
| Nick Farhi | 4 original oils/2 Night Sky/2 Ballerinas | Y |
| Kim Dorland | Flower Vase and flowers | Y |
| Kim Dorland | Aliens exiting forest | Y |

# EXHIBIT 13

**From:** Bryan A.George,Esq.
**To:** Jonathan Vuotto
**Subject:** Plastino
**Date:** Wednesday, August 9, 2023 1:32:52 PM

Dear Jonathan:


  Please be advised that I have been relieved of my duties regarding this matter.Mr. Plastino is retaining Warren Wolf to represent him

  Mr Wolf will need some time to review all the materials I will be sending him.Your patience will be appreciated while he reviews the materials.

  His e mail is wwolf@goldbergwolf.com.He is located in Cherry Hill N.J.

**Bryan A. George, Esquire**

# EXHIBIT 14

| | |
|---|---|
| **From:** | Jonathan Vuotto |
| **To:** | Bryan A.George,Esq. |
| **Cc:** | wwolf@goldbergwolf.com |
| **Subject:** | RE: Plastino |
| **Date:** | Thursday, August 10, 2023 10:54:00 AM |
| **Attachments:** | 2023-07-07 - Settlement Agreement clean.pdf |

Bryan (and Warren):

The delay is unacceptable.  Notwithstanding the fact that David is now apparently on his third lawyer for this matter, there is no reasonable excuse for this settlement to not already be complete – it has been about 60 days since we settled at the mediation conference.  If we do not reach an immediate resolution and close the settlement, then we will be reopening the case.  If and when we do so, then the settlement will be binding and enforceable on the parties.  There will be no additional claim by David for this alleged newly-discovered "$80,000 loan" that is completely undocumented (and that David supposedly 'forgot' about in his counterclaim) and the parties will be forced to incur additional fees and costs to close the original settlement mediated by Magistrate Judge Sitarski.

The only document that needs to be reviewed here is the Settlement Agreement, which I have sent to you multiple times, including on July 7 and July 10, and is again attached hereto for your reference.

We reasonably perceive David as merely playing games here (at best).  Therefore, if we do not substantively hear back from you this week and close this settlement by next week, then we will take appropriate action to enforce the settlement.

Jonathan P. Vuotto, Esq.
McANDREW VUOTTO, LLC

13 Mt. Kemble Avenue
Morristown, New Jersey 07960
Direct: (973) 532-6242
Fax: (973) 538-2103
www.mcandrewvuotto.com

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

**From:** Bryan A.George,Esq. <bryanageorge@verizon.net>
**Sent:** Wednesday, August 9, 2023 1:33 PM
**To:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Subject:** Plastino

# Dear Jonathan:

Please be advised that I have been relieved of my duties regarding this matter.Mr. Plastino is retaining Warren Wolf to represent him

Mr Wolf will need some time to review all the materials I will be sending him.Your patience will be appreciated while he reviews the materials.

His e mail is [wwolf@goldbergwolf.com.He](mailto:wwolf@goldbergwolf.com) is located in Cherry Hill N.J.

**Bryan A. George, Esquire**

# EXHIBIT 15

Michael is co-counsel. Please send him the agreement.

Sent from my iPhone

> On Aug 11, 2023, at 12:02 PM, Jonathan Vuotto <jpv@mcandrewvuotto.com> wrote:

I received a voicemail message from Michael Korolishin, requesting that I send him the settlement agreement.  Who is representing David Plastino?  Who should I communicate with regarding this matter?

Jonathan P. Vuotto, Esq.
McANDREW VUOTTO, LLC
13 Mt. Kemble Avenue
Morristown, New Jersey 07960
Direct: (973) 532-6242
Fax: (973) 538-2103
www.mcandrewvuotto.com

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

**From:** Warren Wolf <WWolf@goldbergwolf.com>
**Sent:** Thursday, August 10, 2023 2:32 PM
**To:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Cc:** Bryan A.George,Esq. <bryanageorge@verizon.net>
**Subject:** FW: Plastino

Hi Jonathan- I received Bryan's file yesterday.  Today is full with meetings and other matters previously scheduled. I'm off tomorrow. I intend to review the file this weekend and expect to be in a position to address it with you by early next week. Thank you for your patience in this regard.

**Warren S. Wolf, Esquire**
**GOLDBERG & WOLF, LLC**
**1949 Berlin Road, Suite 201**

**Cherry Hill, New Jersey 08003**
**Ph 856-651-1600 Fax 856-651-1615**
[wwolf@goldbergwolf.com](mailto:wwolf@goldbergwolf.com)
NOTICE: This email (including attachments) is covered by the Electronic Communications Privacy Act, 18 USC Sections 2510-2521, is confidential and may be protected by the attorney/ client privilege. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender if you have received this email in error, then delete it.

---

**From:** Jonathan Vuotto <[jpv@mcandrewvuotto.com](mailto:jpv@mcandrewvuotto.com)>
**Sent:** Thursday, August 10, 2023 10:54 AM
**To:** Bryan A.George,Esq. <[bryanageorge@verizon.net](mailto:bryanageorge@verizon.net)>
**Cc:** Warren Wolf <[WWolf@goldbergwolf.com](mailto:WWolf@goldbergwolf.com)>
**Subject:** RE: Plastino

Bryan (and Warren):

The delay is unacceptable. Notwithstanding the fact that David is now apparently on his third lawyer for this matter, there is no reasonable excuse for this settlement to not already be complete – it has been about 60 days since we settled at the mediation conference. If we do not reach an immediate resolution and close the settlement, then we will be reopening the case. If and when we do so, then the settlement will be binding and enforceable on the parties. There will be no additional claim by David for this alleged newly-discovered "$80,000 loan" that is completely undocumented (and that David supposedly 'forgot' about in his counterclaim) and the parties will be forced to incur additional fees and costs to close the original settlement mediated by Magistrate Judge Sitarski.

The only document that needs to be reviewed here is the Settlement Agreement, which I have sent to you multiple times, including on July 7 and July 10, and is again attached hereto for your reference.

We reasonably perceive David as merely playing games here (at best). Therefore, if we do not substantively hear back from you this week and close this settlement by next week, then we will take appropriate action to enforce the settlement.

Jonathan P. Vuotto, Esq.
McANDREW VUOTTO, LLC
13 Mt. Kemble Avenue
Morristown, New Jersey 07960
Direct: (973) 532-6242
Fax: (973) 538-2103
[www.mcandrewvuotto.com](http://www.mcandrewvuotto.com)

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

**From:** Bryan A.George,Esq. <bryanageorge@verizon.net>
**Sent:** Wednesday, August 9, 2023 1:33 PM
**To:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Subject:** Plastino

Dear Jonathan:


   Please be advised that I have been relieved of my duties regarding this matter.Mr. Plastino is retaining Warren Wolf to represent him
   Mr Wolf will need some time to review all the materials I will be sending him.Your patience will be appreciated while he reviews the materials.
   His e mail is wwolf@goldbergwolf.com.He is located in Cherry Hill N.J.

**Bryan A. George, Esquire**

# EXHIBIT 16

**From:** Warren Wolf
**To:** Jonathan Vuotto
**Subject:** RE: Plastino adv. Nicholas- settlement communications
**Date:** Monday, August 14, 2023 5:17:49 PM

Jonathan- This email is intended for settlement purposes.

We understand the essence of the settlement of the parties to be that the Titus Kaphar is sold at auction, David gets his $124,582 back, then the parties split the excess proceeds, if any, 60% to Sean and 40% to David. If the Titus sale proceeds are not sufficient to pay David the $124,582 due, then all proceeds go to David and Sean must make up the deficiency. After the Titus proceeds are disbursed and David is paid at least the $124,582, he will release to Sean the other 12 pieces identified as the additional collateral. The parties release all other claims between them.

Our client would like to conclude this settlement, but is uncomfortable with some of the risk he is being asked to absorb in the proposed agreement you drafted. Bryan George asked you to address some of these issues in his letter of July 14, but the draft agreement you circulated last week does not appear to include any of his changes.

The first issue is whether Sean is seeking for David to pay for damage to any of the art which David did not cause. David advises that the Titus Kaphar was damaged before he was provided with possession of it. Does Sean agree with David's contention that the Titus was damaged prior to David receiving possession of it? Maybe the safest thing is for Sean to inspect the pieces before we go any further? David is agreeable to letting Sean inspect. If Sean does not want to inspect, then David will represent that the Titus is in the same condition as the photos he provided through Bryan. If the auctioneer recommends repairs to the Titus before selling it, then the repairs can be paid for from the sale proceeds.

The second issue is that David has no confidence that if Sean sells the painting through Christie's or another auction house, David will ever receive any of the proceeds. Sean appears to have some judgments against himself which could subject any sale proceeds to execution in favor of a judgment creditor. We suggest David be listed as the seller of the Titus with Christie's and the proceeds go into your or my trust accounts.

The third issue is the transport of the Titus to the auction house in NYC. David can deliver it himself. If that is not acceptable and Sean insists on using a third-party delivery service, then the transportation expense should also be paid from the proceeds.

Fourth, David will not release the remaining 12 pieces to Sean until he is paid his portion of the proceeds from the sale of the Titus which must be at least the $124,582 as explained above. Then Sean can arrange for the transfer of the remaining 12 pieces. When David releases the remaining collateral pieces to Sean, Sean needs to sign a release stating that the art was transferred to him in satisfactory condition and that no claims for damages can be made after the transfer. Sean can inspect each individual piece of art prior to transfer and if he feels there is damage that occurred while in David's possession, then the parties will have to determine an appropriate resolution at that time. In any case, David will not release any piece of art to Sean without a full waiver of any damage

claims.

Fifth, the District Court for the Eastern District of Pennsylvania is where any enforcement or other issues should be heard since Sean commenced the action there. We disagree that NY law should govern, but if your client won't agree to PA law governing then we propose that the choice of governing law be left out of the agreement.

Kindly advise if your client is in agreement with these issues. If so, I will revise your agreement accordingly.  Please be further advised that the above points are without prejudice to our client seeking additional changes to your draft agreement, but let's at least see if we are in agreement on the above material points first.

We look forward to working with you,
Warren

---

**From:** Warren Wolf
**Sent:** Friday, August 11, 2023 12:52 PM
**To:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Cc:** Koro4321@gmail.com; Bryan A.George,Esq. <bryanageorge@verizon.net>
**Subject:** Re: Plastino

Michael is co-counsel. Please send him the agreement.

Sent from my iPhone

On Aug 11, 2023, at 12:02 PM, Jonathan Vuotto <jpv@mcandrewvuotto.com> wrote:

I received a voicemail message from Michael Korolishin, requesting that I send him the settlement agreement.  Who is representing David Plastino?  Who should I communicate with regarding this matter?

Jonathan P. Vuotto, Esq.
McANDREW VUOTTO, LLC
13 Mt. Kemble Avenue
Morristown, New Jersey 07960
Direct: (973) 532-6242
Fax: (973) 538-2103
www.mcandrewvuotto.com

---

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

**From:** Warren Wolf <WWolf@goldbergwolf.com>
**Sent:** Thursday, August 10, 2023 2:32 PM
**To:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Cc:** Bryan A.George,Esq. <bryanageorge@verizon.net>
**Subject:** FW: Plastino

Hi Jonathan- I received Bryan's file yesterday.  Today is full with meetings and other matters previously scheduled. I'm off tomorrow. I intend to review the file this weekend and expect to be in a position to address it with you by early next week. Thank you for your patience in this regard.

**Warren S. Wolf, Esquire**
**GOLDBERG & WOLF, LLC**
**1949 Berlin Road, Suite 201**
**Cherry Hill, New Jersey 08003**
**Ph 856-651-1600 Fax 856-651-1615**
**wwolf@goldbergwolf.com**
NOTICE: This email (including attachments) is covered by the Electronic Communications Privacy Act, 18 USC Sections 2510-2521, is confidential and may be protected by the attorney/ client privilege. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender if you have received this email in error, then delete it.

**From:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Sent:** Thursday, August 10, 2023 10:54 AM
**To:** Bryan A.George,Esq. <bryanageorge@verizon.net>
**Cc:** Warren Wolf <WWolf@goldbergwolf.com>
**Subject:** RE: Plastino

Bryan (and Warren):

The delay is unacceptable.  Notwithstanding the fact that David is now apparently on his third lawyer for this matter, there is no reasonable excuse for this settlement to not already be complete – it has been about 60 days since we settled at the mediation conference.  If we do not reach an immediate resolution and close the settlement, then we will be reopening the case.  If and when we do so, then the settlement will be binding and enforceable on the parties.  There will be no additional claim by David for this alleged newly-discovered "$80,000 loan" that is completely undocumented (and that David supposedly 'forgot' about in his counterclaim) and the parties will be forced to incur additional fees and costs to close the original settlement mediated by Magistrate Judge Sitarski.

The only document that needs to be reviewed here is the Settlement Agreement,

which I have sent to you multiple times, including on July 7 and July 10, and is again attached hereto for your reference.

We reasonably perceive David as merely playing games here (at best). Therefore, if we do not substantively hear back from you this week and close this settlement by next week, then we will take appropriate action to enforce the settlement.

Jonathan P. Vuotto, Esq.
McANDREW VUOTTO, LLC
13 Mt. Kemble Avenue
Morristown, New Jersey 07960
Direct: (973) 532-6242
Fax: (973) 538-2103
www.mcandrewvuotto.com

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

**From:** Bryan A.George,Esq. <bryanageorge@verizon.net>
**Sent:** Wednesday, August 9, 2023 1:33 PM
**To:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Subject:** Plastino

Dear Jonathan:


Please be advised that I have been relieved of my duties regarding this matter.Mr. Plastino is retaining Warren Wolf to represent him
Mr Wolf will need some time to review all the materials I will be sending him.Your patience will be appreciated while he reviews the materials.
His e mail is wwolf@goldbergwolf.com.He is located in Cherry Hill N.J.

**Bryan A. George, Esquire**

# EXHIBIT 17

Jon- The KYC is a due diligence person doing a background check for compliance. David needs to be put in touch with whom Sean is dealing with at Christie's, who is telling Sean that the sale proceeds cannot be sent to my trust account despite your agreement to same, etc. Can you give me a name and phone of who that person is at Christie's?  Also, Sean should advise them that David will be calling and they can speak freely with him.

We still have yet to see any paperwork or emails from Christie's.

I also need to let you know that I will be away Sep 8-17 with limited internet access.

**From:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Sent:** Wednesday, September 06, 2023 1:08 PM
**To:** Warren Wolf <WWolf@goldbergwolf.com>
**Subject:** RE: Plastino adv. Nicholas- settlement communications

Warren:

In response to your points:

1.      The representative from Christie's will need to contact David to get his KYC information. Do we have permission to provide David's contact info to them?

2.      No money from the sale is being paid out to anyone but Sean and David (and Christie's commission).

3.      Christie's commission is 6%.

Jonathan P. Vuotto, Esq.
McANDREW VUOTTO, LLC
13 Mt. Kemble Avenue
Morristown, New Jersey 07960
Direct: (973) 532-6242
Fax: (973) 538-2103
www.mcandrewvuotto.com

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

**From:** Warren Wolf <WWolf@goldbergwolf.com>

**Sent:** Tuesday, September 5, 2023 4:53 PM
**To:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Subject:** RE: Plastino adv. Nicholas- settlement communications

Jon- Good speaking with you today. Please let me know what your client says about (1) David speaking with Christies, (2) advising whether any brokers, finders or anyone else is getting paid out of the sale and (3) what Christie's commissions are.

Thank you for confirming Sean is the owner and the provenance is in his name.

---

**From:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Sent:** Tuesday, September 05, 2023 4:19 PM
**To:** Warren Wolf <WWolf@goldbergwolf.com>
**Subject:** RE: Plastino adv. Nicholas- settlement communications

Warren:

I called you this afternoon but did not reach you and left a voicemail message.  It has been a week and I have not heard back from you regarding my email below.  Sean has made concessions on all of his positions in order to complete this settlement and nevertheless we are now receiving no response.  Please call me.  Thank you.

Jonathan P. Vuotto, Esq.
McANDREW VUOTTO, LLC
13 Mt. Kemble Avenue
Morristown, New Jersey 07960
Direct: (973) 532-6242
Fax: (973) 538-2103
www.mcandrewvuotto.com

---

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

---

**From:** Jonathan Vuotto
**Sent:** Tuesday, August 29, 2023 7:04 PM
**To:** Warren Wolf <WWolf@goldbergwolf.com>
**Subject:** RE: Plastino adv. Nicholas- settlement communications

Warren:

We are not responding to your demands because they are ridiculous, particularly considering that David and Bryan wasted over two months of our time and now we are down to the wire to get the Titus to the September auction.  There are no emails with Christies.  Sean has been talking with them

and they have been having internal discussions with their legal department and then getting back to Sean. Sean asked them to provide an agreement and he asked them to put David on it, because of David's demands.

Christie's can draft a bailment agreement for both Sean and David to sign, which would allow Christie's to auction the painting. Unfortunately timing is very tight here, and a few things have to happen before Christie's will prepare the agreement. They will need to create an account for David, and will need his full KYC information (photo ID, proof of address). David will then need to agree to the bailment agreement and sign it, in order for Christie's to auction the painting.

According to Christie's, in order for there to be a 'successful sale' and thus pass clean, full title to the purchaser, the sale price has to cover the full amount owed by Sean to David. That should not be an issue for the Titus.

Assuming the sale is successful, the amount owed to David would be sent directly to him, but the overage must go to Sean's bank account. If the sale is not successful, the agreement will provide that the piece will be returned to David and not to Sean. Christie's said they can't hold it.

Unless and until Sean and David agree to this process, Christie's will not issue the agreement.
b
This dispute is no longer about who did what years ago. It is about whether we can close the settlement that Sean and David agreed to before Judge Sitarski. Sean has been reasonable and has been making concessions repeatedly. He is now willing to let David hold the other pieces until Sean pays him the amount owed, just to get this done.

Please let me know if we need to schedule a call. I'm away on vacation with my family this week, but I will make time if necessary.

Jonathan P. Vuotto, Esq.
McANDREW VUOTTO, LLC
13 Mt. Kemble Avenue
Morristown, New Jersey 07960
Direct: (973) 532-6242
Fax: (973) 538-2103
[www.mcandrewvuotto.com](www.mcandrewvuotto.com)

---

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system. Thank You.

---

**From:** Warren Wolf <[WWolf@goldbergwolf.com](mailto:WWolf@goldbergwolf.com)>
**Sent:** Tuesday, August 29, 2023 3:13 PM
**To:** Jonathan Vuotto <[jpv@mcandrewvuotto.com](mailto:jpv@mcandrewvuotto.com)>
**Subject:** RE: Plastino adv. Nicholas- settlement communications

Jon- Tomorrow is one week since I emailed you to "please send me a copy of the signed Christies' contract or if not yet signed, the draft Sean is reviewing, all emails with Christies or any other communications/ documents concerning compensation surrounding the auction of the Titus including any 3rd party brokers/ finders which may be involved. We need full disclosure to evaluate your terms."

To date you have not sent me any of the requested documents nor attempted to address the concerns raised in my email. Kindly forward the documents immediately. Also advise:
1.     Who exactly is selling the Titus
2.     Are there any brokers/ finders or anyone else involved that are getting paid from the sale
3.     What is Christie's commission/ compensation structure.

I find it disingenuous you cannot respond to these issues and are now demanding a contract we have never seen be signed immediately. I also do not understand why Christie's cannot hold all of the proceeds until Sean and David jointly approve a distribution schedule. It is unreasonable for Sean to expect David to trust Sean that he will send David his money after the Titus is gone and the other art is delivered to Sean. We would not be here but for Sean failing to provide the original art Sean admits David paid him to purchase. David would be a fool to set himself up again to get duped Sean. If you want David to consider doing this your way, we need to get full disclosure of all contacts with Christie's. I really can't say it any clearer.

**From:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Sent:** Tuesday, August 29, 2023 12:12 PM
**To:** Warren Wolf <WWolf@goldbergwolf.com>
**Subject:** RE: Plastino adv. Nicholas- settlement communications

Warren:

Sean has had multiple conversations with Christies over the past few days. They are requiring certain due diligence information from David immediately in order to fulfill their KYC requirements. They will pay David the amount owed (the $124k) but they are requiring that the balance be paid to Sean. Sean agrees to pay David the 40% immediately upon his receipt of the funds. They need to have the agreement executed right away, so we need to get on this immediately. Please let me know if a conference call with you, me, Sean and David is necessary to get this accomplished.

This may not be ideal from either party's perspective, but if they want to sell the Titus at the September auction, this is what they have to do. Please respond asap. Thank you.

Jonathan P. Vuotto, Esq.
McANDREW VUOTTO, LLC
13 Mt. Kemble Avenue
Morristown, New Jersey 07960
Direct: (973) 532-6242
Fax: (973) 538-2103

[www.mcandrewvuotto.com](http://www.mcandrewvuotto.com)

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system. Thank You.

**From:** Jonathan Vuotto
**Sent:** Friday, August 25, 2023 4:03 PM
**To:** Warren Wolf <[WWolf@goldbergwolf.com](mailto:WWolf@goldbergwolf.com)>
**Subject:** RE: Plastino adv. Nicholas- settlement communications

Warren,

I've been busier than anticipated with depositions and court appearances this week so I have not been able to talk with Sean until today.

Christies is supposed to be providing a consignment agreement, which we will send to you when we receive it. They were supposed to have it this week, but Sean inquired about adding the stipulation that, in the unlikely case the work is not sold, it will be returned to David's address, in an effort to appease David's demands, and that seems to have caused a delay.

Christies said that they are now having their legal department get involved. Assuming this does not create an issue that will cause the parties to miss the September auction, and assuming everyone is ok with Christies' agreement when we receive it, then David is going to have to expect Christies to pick up the Titus quickly – it is going to have to be picked up next week if it is going to be included in the September auction. Please let us know right away if there are any issues with that.

I will let you know when we receive the consignment agreement.

Jonathan P. Vuotto, Esq.
McANDREW VUOTTO, LLC
13 Mt. Kemble Avenue
Morristown, New Jersey 07960
Direct: (973) 532-6242
Fax: (973) 538-2103
[www.mcandrewvuotto.com](http://www.mcandrewvuotto.com)

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

**From:** Warren Wolf <[WWolf@goldbergwolf.com](mailto:WWolf@goldbergwolf.com)>
**Sent:** Friday, August 25, 2023 9:53 AM

**To:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Subject:** RE: Plastino adv. Nicholas- settlement communications

Jon- Could you either return the phone call I placed to you Tuesday or respond to the below email today. We'd like to get this resolved in time to sell the Titus next month.

---

**From:** Warren Wolf
**Sent:** Tuesday, August 22, 2023 3:56 PM
**To:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Subject:** RE: Plastino adv. Nicholas- settlement communications

Jon- Please send me a copy of the signed Christies' contract or if not yet signed, the draft Sean is reviewing, all emails with Christies or any other communications/ documents concerning compensation surrounding the auction of the Titus including any 3rd party brokers/ finders which may be involved. We need full disclosure to evaluate your terms.

---

**From:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Sent:** Monday, August 21, 2023 2:18 PM
**To:** Warren Wolf <WWolf@goldbergwolf.com>
**Subject:** RE: Plastino adv. Nicholas- settlement communications

Warren:

The ship has long since sailed on David's arguments about the 'original art.' It makes no sense to continue talking about it.

We did not agree to the points in Bryan's July 14 letter. That would be like saying that you agreed with the settlement agreement that I repeatedly sent to him (and you). If we had, then we would not be having these emails.

In yet another attempt for a reasonable compromise driven by David's ridiculousness, Sean will agree to never take possession of the Titus. Sean agrees that, in the unlikely event that Christies does not sell the Titus at auction, then it will be returned to David until re-consigned for sale. Christies will send the proceeds of the sale to your trust account for disbursement in accordance with the 60 (Sean) /40 (David) split. Sean will also agree to waive any damages to any of the other works, including the Miss Bugs, if David represents that he will wrap them properly before transporting them – but the other pieces are to be returned to Sean upon signing the agreement. The immediate return of the other works to Sean is precisely what David proposed to Judge Sitarski on the Zoom call held on June 15, 2023, which resulted in the settlement.

Sean is not interested in David's new proposal to change the deal in yet a different way. If Sean's additional concessions to David are sufficient, then please revise the agreement and send it to me for our review.

Jonathan P. Vuotto, Esq.

McANDREW VUOTTO, LLC
13 Mt. Kemble Avenue
Morristown, New Jersey 07960
Direct: (973) 532-6242
Fax: (973) 538-2103
www.mcandrewvuotto.com

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

**From:** Warren Wolf <WWolf@goldbergwolf.com>
**Sent:** Monday, August 21, 2023 12:23 PM
**To:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Subject:** RE: Plastino adv. Nicholas- settlement communications

Jon- We can agree to disagree on the underlying facts since neither one of us has personal knowledge and each of us only know what our clients have told us.

David is not getting a windfall under the current settlement being negotiated. The original art my client paid yours to provide included a different Titus Kaphar. Had your client delivered what he promised, my client would have had the other Titus and other art over 5 years ago which would have gone up in value presumably proportionate to the Titus we are trying to sell at Christies next month. The 40% split going to David compensates him for that lost value and having to wait 5 years to be made whole.

As we advised last week, David having joint control with Christies on the Titus sale and it going back to him if not sold is a deal breaker on the current settlement. This is what the parties agreed as explained in Bryan George's letter of 7/14/23. If you believe the parties agreed to the contrary, please advise what you are basing that belief and we will discuss with our client. Otherwise, if the court finds there was not an agreement on all the material terms of a settlement then we would be able to litigate all of David's claims against Sean including lost value for the original art Sean deceived my client into paying him to purchase.

If your client does not want to honor what was originally agreed, I have been authorized to make a new settlement offer. Your client provides the provenances including certificates of authenticity for all of the art at issue to me to hold in escrow. Your client has 6 months to pay David $140,000. If he pays it timely, yours gets the 13 pieces. If he does not pay it timely, David gets all of the provenances and keeps the art. Both parties exchange mutual release. If your client is fine with the "as is" condition of all the art except Miss Bugs, he is welcome to inspect Miss Bugs as part of the agreement because we'll need a release on any damage to that too. This offer is subject to David approving a scan of the provenances being provided and to it being memorialized in a settlement agreement. If this offer is not accepted within 3 days, it shall be deemed revoked.

**From:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Sent:** Monday, August 21, 2023 10:04 AM
**To:** Warren Wolf <WWolf@goldbergwolf.com>
**Subject:** RE: Plastino adv. Nicholas- settlement communications

Warren:

You are incorrect on the facts. David took the art from Sean's home while Sean was out of the country, obtaining access through Sean's sister. The agreement whereby David was to hold the art as collateral security was entered into only after Sean returned to the country to discover that the art was gone and David was gloating about it. Sean does not contest that David is owed the money as set forth in the agreement (as a result of Sean's ex-business partner's negligence, not Sean's, who was rectifying the situation personally rather than through the Gallery), but the correct facts are that David improperly took the art from Sean's premises while Sean was away and before there was any agreement between them – so put whatever label on David's actions that you would like.

Contrary to your statement, Sean has showed remarkable reasonableness throughout this process, whereas David has not. Sean agreed to give David 40% more than David is entitled to under the prior agreement, simply so that Sean can put this in the past. Sean compromised on using an art handler for the delivery of the works. Sean has agreed to waive any damages to any of the works but the Miss Bugs. Sean has agreed to allow the sale proceeds to go into the attorney trust account of David's attorney of the week. Sean has thus-far declined to go back to court, despite David's absurd contortions with the settlement (including at one point telling us Sean could have all the works including the Titus in exchange for providing provenance for other works). But David is apparently not satisfied with his unwarranted windfall and his need to control things is apparently going to lead to additional litigation.

With respect to additional litigation, also contrary to your point, there will be no possibility of David going back to re-litigate his nonsense alleged "right to keep all of the art." That position was bogus and contrary to the parties' prior agreement, but, in any event, the parties have settled and the initial case is dismissed. The only thing to litigate is David's failure to proceed with the settlement agreement that the parties voluntarily agreed to before Judge Sitarski. There is no more non-frivolous claim for David to "keep all of the art."

As yet another reasonable compromise, Sean will agree that, in the unlikely event that the Titus does not sell, then the Titus will remain on consignment with Christies until the next auction. Sean cannot 'cancel' the auction because there is a binding consignment agreement with Christies.

Please let us know if David wants to close the deal or waste additional time and money litigating.

Jonathan P. Vuotto, Esq.
McANDREW VUOTTO, LLC
13 Mt. Kemble Avenue
Morristown, New Jersey 07960
Direct: (973) 532-6242

Fax: (973) 538-2103
[www.mcandrewvuotto.com](www.mcandrewvuotto.com)

---

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

**From:** Warren Wolf <[WWolf@goldbergwolf.com](mailto:WWolf@goldbergwolf.com)>
**Sent:** Friday, August 18, 2023 3:42 PM
**To:** Jonathan Vuotto <[jpv@mcandrewvuotto.com](mailto:jpv@mcandrewvuotto.com)>
**Subject:** RE: Plastino adv. Nicholas- settlement communications

Jon- I do not appreciate you calling my client a thief. He did not steal anything. The art was provided to him only after Sean signed the agreement attached to your complaint. We are prepared to litigate this issue and David's right to keep all of the art, but prefer to try to settle.

With respect to your email below, the major sticking point is your client's refusal to include David in the Christies process, advise Christies that all instructions must be joint from Sean and David and if the Titus it not sold, it goes back to David. Frankly, this is a deal breaker for our client as he believes yours will figure out a way to get the Titus back and my client will have nothing. We gave in on returning the 12 remaining pieces to Sean before David gets paid and now your client must show some reasonableness. Kindly ask your client to reconsider his position on this issue.

---

**From:** Jonathan Vuotto <[jpv@mcandrewvuotto.com](mailto:jpv@mcandrewvuotto.com)>
**Sent:** Friday, August 18, 2023 9:22 AM
**To:** Warren Wolf <[WWolf@goldbergwolf.com](mailto:WWolf@goldbergwolf.com)>
**Subject:** RE: Plastino adv. Nicholas- settlement communications

Warren:

In response to your points:

1. Sean does not think any of the pieces are damaged based on the pictures David previously sent, and he hopes to believe that David is not malicious enough to damage them on purpose. Sean does not care if a frame is dented and believes the works will be returned in almost the same condition they were stolen in. Sean will not be present for any delivery of the works, but a representative for Sean who can look over the work and sign a release that the condition is acceptable will be available. Finally, when one of the works (Miss Bugs) was stolen, it was done to intentionally hurt Sean, not because of the value of the work, which only has value to Sean. Sean has legitimate concerns about the condition of that piece. It most likely cannot be repaired if the resin is damaged (and resin is so soft a thumb can damage it). It is the one work that should have an art handler crate and be returned separately at David's cost. Sean will agree to waive any damages as to any of the other works if David represents that he will wrap and transport those properly, and if David agrees to have

the Miss Bugs returned by a professional art handler.

2. Sean has already arranged to have the Titus taken on consignment by Christies. David is not the owner or a co-owner of the work and does not have the provenance – he is in possession of the Titus because he stole it and then Sean agreed to let David hold it as collateral security – ownership was never conveyed, in whole or in part. Therefore, we will not agree that David is a 'co-owner' or to allow David to arrange for the sale. You are essentially requesting that we defraud Christies, which we will not agree to do. We are agreeing to have Christies disburse the sale proceeds to your trust account. There is an extremely minimal possibility that the Titus does not sell for more than the amount owed to David. If David attempts to insert himself in the sale of the Titus now, it is going to cause an issue with Christies and then there will be a substantial delay before the work can be sold. Sean is actively working on his creditor issues and whether there are judgments against Sean is not relevant to this analysis.

3. David's opinion on art is not relevant to us; he is not experienced in the industry. The Titus will be sold and David will be paid from the sale results in accordance with the parties' agreement. Sean will agree that David will not be responsible for any repairs to the frame.

If we are in agreement on these points, then make the appropriate revisions to the agreement and Sean will sign it today.

Jonathan P. Vuotto, Esq.
McANDREW VUOTTO, LLC
13 Mt. Kemble Avenue
Morristown, New Jersey 07960
Direct: (973) 532-6242
Fax: (973) 538-2103
www.mcandrewvuotto.com

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

**From:** Warren Wolf <WWolf@goldbergwolf.com>
**Sent:** Thursday, August 17, 2023 11:02 AM
**To:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Subject:** RE: Plastino adv. Nicholas- settlement communications

Jon- Following up the voicemail I just left for you, it is in both of our clients' best interest to sell the Titus at the Sept sale so we are in agreement on that. Can you ask Sean when exactly that sale is and what the deadline is to get the Titus registered to sell then?

I have no problem revising the agreement. However, it is not efficient to revise a legal agreement with terms which aren't first agreed. That is why I am trying to reach an agreement on important points before editing your document. Please discuss the following terms with your client and advise:

1. David will agree to the deliver the remaining 12 pieces to Sean before the Titus sells at

Christies if Sean agrees to inspect them at time of delivery and sign a release that their condition is satisfactory to him and he will not pursue any claims against David for damage to these pieces. If Sean believes any of the pieces were damaged while in David's custody, then David will keep only those pieces until the parties can agree on who is responsible for the costs to repair the damage.

2. David will agree to let Sean sell the Titus through Christies provided (1) there are no open judgments against Sean in NY or NJ, (2) David can meet with Christies and (3) Christies signs a document acknowledging David is the co-owner of the art, the sale proceeds go into my trust account and if the piece does not sell it is returned to only David. Otherwise, David should be listed as the seller which will protect Sean from creditor's claims too.

3. Sean must acknowledge that the Titus was damaged when it was last in Sean's possession. David advises that the frame is damaged and believes this is the type of art where the frame was picked by the artist and is an integral part of the art.

These are important conditions to my client and subject to us reaching an overall agreement. Kindly confirm they are acceptable to your client and I will revise your proposed agreement.

**From:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Sent:** Wednesday, August 16, 2023 1:56 PM
**To:** Warren Wolf <WWolf@goldbergwolf.com>
**Subject:** RE: Plastino adv. Nicholas- settlement communications

Warren,

Sean Nicholas is traveling today and will be back tomorrow and I will discuss this matter with him then. In the meantime, in response to your emails, I have not received any good-faith proposed revisions to the settlement agreement, just exposition about what people like or don't like. If you are going to "revoke" the negotiations that Bryan wasted our time with over the past two months, then we can move forward with litigation now rather than starting over.

The point with this settlement is that the parties are separating their interests and releasing each other. The Titus, which is the only piece with substantial value, has to be sold at auction to maximize the parties' recovery, and that is to happen in September. The rest of the art, which has little and uncertain value, is to be given to Sean when the parties sign the agreement, so that this can be put to bed asap rather than dragging on. When Sean has the 13 pieces and the Titus is with Christies, the settlement is essentially complete.

The proceeds of the Titus sale can be sent to your trust account by Christies. If David does not trust Christies to do that properly, then I don't know if there's anything further we can do about that. If there is no sale or if, in the unlikely event the Titus does not sell for enough to pay off the amount owed to David, then Sean is obligated to pay David any shortfall within 30 days. That's the agreement that was negotiated and agreed to before Judge Sitarski. If David is reneging on that, then there is no need to waste any more time with emails.

With respect to judgment creditors, first, the judgment you found has been satisfied. Second, to the

extent there are others, do you and David think that the situation would be any different if creditors knew that David was in possession of an asset owned by Sean that has a value in excess of the amount owed to David? David would be in receipt of a restraining notice pretty quickly. If you are concerned with creditors, then that is all the more reason to close this agreement and get the Titus to auction rather than wasting additional time.

Attached is the settlement agreement in Word. I believe you know what our position is on this. If you want to make changes that do not alter the fundamental settlement agreed to before Judge Sitarski, then please make them in the document for our review as soon as possible.

Again, I am sending this email before I've had the chance to further discuss this matter with Sean, so both the agreement and my positions reflected herein remain subject to his review and approval.

Jonathan P. Vuotto, Esq.
McANDREW VUOTTO, LLC
13 Mt. Kemble Avenue
Morristown, New Jersey 07960
Direct: (973) 532-6242
Fax: (973) 538-2103
www.mcandrewvuotto.com

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

**From:** Warren Wolf <WWolf@goldbergwolf.com>
**Sent:** Wednesday, August 16, 2023 11:51 AM
**To:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Subject:** RE: Plastino adv. Nicholas- settlement communications

Jonathan- Our client is committed to trying to settle this case with the terms originally agreed. Respectfully, you do not get to unilaterally propose a draft agreement and expect our client to agree to the details you chose to insert. We would appreciate a response to the below email at your earliest convenience. I have to leave at 12:30 today so will not be able to respond to any emails after such time until tomorrow.

Please be further advise that any offers to settle from David's prior counsel which differ from the original settlement are revoked.

**From:** Warren Wolf
**Sent:** Tuesday, August 15, 2023 5:41 PM
**To:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Subject:** RE: Plastino adv. Nicholas- settlement communications

Jonathan- Why is your client insisting on getting the 13 remaining pieces before David gets paid? Your client has been waiting 5 years to get these back. Why would another couple months be a problem for him?

On the flip side, David fears that Sean will somehow convince the auction house to either (1) divert the proceeds fully to Sean or (2) cancel the sale and request the Titus be sent back to Sean whereby David will have lost the art and not gotten paid.

Also, if Christies lists Sean as the owner, don't you think there's a risk that a judgment creditor like this one may have a Writ served on Christies? https://images.law.com/contrib/content/uploads/documents/407/10890/Abaddon-3.pdf.

---

**From:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Sent:** Tuesday, August 15, 2023 4:13 PM
**To:** Warren Wolf <WWolf@goldbergwolf.com>
**Subject:** RE: Plastino adv. Nicholas- settlement communications

Warren:

You are incorrect and we've already been down this path before. Sean gets the other artwork delivered to 55 Delancey Street and is not waiting until the Titus is sold. We are not interested in hearing about what risk your client has. He settled the case and is getting more than he is entitled to under the parties' prior agreement. Also, he took the art from Sean's house, and therefore he should get it back to Sean. He can deliver the works to 55 Delancy himself if he wants to.

With respect to any damages to the other 13 works, there is no need for Sean to inspect them. If there are any damages (there did not appear to be anything too substantial from the pictures that David provided), then the costs can come from the proceeds of the Titus sale. Transporting the works to New York is where there could be problems if David does not use a licensed art handler. Anything framed can be wrapped in bubble wrap. Any canvas should be wrapped in glassine paper then bubble wrapped. The Miss Bugs work is made of delicate resin materials and needs to be handled with caution. While Sean would not seek damages for dings in frames, if the Miss Bugs work is damaged it would destroy its value; therefore, the Miss Bugs cannot have anything stacked on top of it due to the resin and it is too heavy to be stacked on everything else. If David cannot assure delivery in a timely and adequate manner and as described, then we strongly recommend one of the art handlers we mentioned in the agreement.

With respect to David receiving his portion of the Titus sale proceeds, we already said that the proceeds can go into Bryan George's trust account (now your account or Michael Korolishin's, whichever David decides). But David is not going to be listed as the seller, because he does not have the provenance documents and Sean has already begun the consignment discussions with Christies, so a change now would cause a delay in the sale, which the parties already agreed should be in September to maximize the recovery.

With respect to David's requested release, he is getting one under the agreement, so the sooner we get the signed agreement the sooner he gets his release.

The choice of law provision is not high priority for us. The settlement is enforceable under either PA or NY law.

If David wants to close this deal rather than litigate it more, then please let me know and I will make the appropriate changes to the agreement. (Going forward, if you want changes, then make them in the draft, I am not your assistant.) We are not spending substantially more time on this while David gets his head together and decides who is representing him. We are either closing the deal this week or we are done negotiating and will litigate.


Jonathan P. Vuotto, Esq.
McANDREW VUOTTO, LLC
13 Mt. Kemble Avenue
Morristown, New Jersey 07960
Direct: (973) 532-6242
Fax: (973) 538-2103
www.mcandrewvuotto.com

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

**From:** Warren Wolf <WWolf@goldbergwolf.com>
**Sent:** Monday, August 14, 2023 5:18 PM
**To:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Subject:** RE: Plastino adv. Nicholas- settlement communications

Jonathan- This email is intended for settlement purposes.

We understand the essence of the settlement of the parties to be that the Titus Kaphar is sold at auction, David gets his $124,582 back, then the parties split the excess proceeds, if any, 60% to Sean and 40% to David. If the Titus sale proceeds are not sufficient to pay David the $124,582 due, then all proceeds go to David and Sean must make up the deficiency. After the Titus proceeds are disbursed and David is paid at least the $124,582, he will release to Sean the other 12 pieces identified as the additional collateral. The parties release all other claims between them.

Our client would like to conclude this settlement, but is uncomfortable with some of the risk he is being asked to absorb in the proposed agreement you drafted. Bryan George asked you to address some of these issues in his letter of July 14, but the draft agreement you circulated last week does not appear to include any of his changes.

The first issue is whether Sean is seeking for David to pay for damage to any of the art which David

did not cause. David advises that the Titus Kaphar was damaged before he was provided with possession of it. Does Sean agree with David's contention that the Titus was damaged prior to David receiving possession of it? Maybe the safest thing is for Sean to inspect the pieces before we go any further? David is agreeable to letting Sean inspect. If Sean does not want to inspect, then David will represent that the Titus is in the same condition as the photos he provided through Bryan. If the auctioneer recommends repairs to the Titus before selling it, then the repairs can be paid for from the sale proceeds.

The second issue is that David has no confidence that if Sean sells the painting through Christie's or another auction house, David will ever receive any of the proceeds. Sean appears to have some judgments against himself which could subject any sale proceeds to execution in favor of a judgment creditor. We suggest David be listed as the seller of the Titus with Christie's and the proceeds go into your or my trust accounts.

The third issue is the transport of the Titus to the auction house in NYC. David can deliver it himself. If that is not acceptable and Sean insists on using a third-party delivery service, then the transportation expense should also be paid from the proceeds.

Fourth, David will not release the remaining 12 pieces to Sean until he is paid his portion of the proceeds from the sale of the Titus which must be at least the $124,582 as explained above. Then Sean can arrange for the transfer of the remaining 12 pieces. When David releases the remaining collateral pieces to Sean, Sean needs to sign a release stating that the art was transferred to him in satisfactory condition and that no claims for damages can be made after the transfer. Sean can inspect each individual piece of art prior to transfer and if he feels there is damage that occurred while in David's possession, then the parties will have to determine an appropriate resolution at that time. In any case, David will not release any piece of art to Sean without a full waiver of any damage claims.

Fifth, the District Court for the Eastern District of Pennsylvania is where any enforcement or other issues should be heard since Sean commenced the action there. We disagree that NY law should govern, but if your client won't agree to PA law governing then we propose that the choice of governing law be left out of the agreement.

Kindly advise if your client is in agreement with these issues. If so, I will revise your agreement accordingly. Please be further advised that the above points are without prejudice to our client seeking additional changes to your draft agreement, but let's at least see if we are in agreement on the above material points first.

We look forward to working with you,
Warren

---

**From:** Warren Wolf
**Sent:** Friday, August 11, 2023 12:52 PM
**To:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Cc:** Koro4321@gmail.com; Bryan A.George,Esq. <bryanageorge@verizon.net>

**Subject:** Re: Plastino

Michael is co-counsel. Please send him the agreement.

Sent from my iPhone

> On Aug 11, 2023, at 12:02 PM, Jonathan Vuotto <jpv@mcandrewvuotto.com> wrote:

I received a voicemail message from Michael Korolishin, requesting that I send him the settlement agreement. Who is representing David Plastino? Who should I communicate with regarding this matter?

Jonathan P. Vuotto, Esq.
McANDREW VUOTTO, LLC
13 Mt. Kemble Avenue
Morristown, New Jersey 07960
Direct: (973) 532-6242
Fax: (973) 538-2103
www.mcandrewvuotto.com

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

**From:** Warren Wolf <WWolf@goldbergwolf.com>
**Sent:** Thursday, August 10, 2023 2:32 PM
**To:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Cc:** Bryan A.George,Esq. <bryanageorge@verizon.net>
**Subject:** FW: Plastino

Hi Jonathan- I received Bryan's file yesterday. Today is full with meetings and other matters previously scheduled. I'm off tomorrow. I intend to review the file this weekend and expect to be in a position to address it with you by early next week. Thank you for your patience in this regard.

**Warren S. Wolf, Esquire**
**GOLDBERG & WOLF, LLC**
**1949 Berlin Road, Suite 201**
**Cherry Hill, New Jersey 08003**
**Ph 856-651-1600 Fax 856-651-1615**
**wwolf@goldbergwolf.com**
NOTICE: This email (including attachments) is covered by the Electronic

Communications Privacy Act, 18 USC Sections 2510-2521, is confidential and may be protected by the attorney/ client privilege. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender if you have received this email in error, then delete it.

---

**From:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Sent:** Thursday, August 10, 2023 10:54 AM
**To:** Bryan A.George,Esq. <bryanageorge@verizon.net>
**Cc:** Warren Wolf <WWolf@goldbergwolf.com>
**Subject:** RE: Plastino

Bryan (and Warren):

The delay is unacceptable. Notwithstanding the fact that David is now apparently on his third lawyer for this matter, there is no reasonable excuse for this settlement to not already be complete – it has been about 60 days since we settled at the mediation conference. If we do not reach an immediate resolution and close the settlement, then we will be reopening the case. If and when we do so, then the settlement will be binding and enforceable on the parties. There will be no additional claim by David for this alleged newly-discovered "$80,000 loan" that is completely undocumented (and that David supposedly 'forgot' about in his counterclaim) and the parties will be forced to incur additional fees and costs to close the original settlement mediated by Magistrate Judge Sitarski.

The only document that needs to be reviewed here is the Settlement Agreement, which I have sent to you multiple times, including on July 7 and July 10, and is again attached hereto for your reference.

We reasonably perceive David as merely playing games here (at best). Therefore, if we do not substantively hear back from you this week and close this settlement by next week, then we will take appropriate action to enforce the settlement.

Jonathan P. Vuotto, Esq.
McANDREW VUOTTO, LLC
13 Mt. Kemble Avenue
Morristown, New Jersey 07960
Direct: (973) 532-6242
Fax: (973) 538-2103
www.mcandrewvuotto.com

---

Confidentiality notice: This e-mail contains information that is privileged and confidential and subject to legal restrictions and penalties regarding its unauthorized disclosure or other use. You are prohibited from copying, distributing or otherwise using this information if you are not the intended recipient. If you have received this e-mail in error, please notify us immediately by return e-mail and delete this e-mail and all attachments from your system.

**From:** Bryan A.George,Esq. <bryanageorge@verizon.net>
**Sent:** Wednesday, August 9, 2023 1:33 PM
**To:** Jonathan Vuotto <jpv@mcandrewvuotto.com>
**Subject:** Plastino

Dear Jonathan:


   Please be advised that I have been relieved of my duties regarding this matter.Mr. Plastino is retaining Warren Wolf to represent him
   Mr Wolf will need some time to review all the materials I will be sending him.Your patience will be appreciated while he reviews the materials.
   His e mail is wwolf@goldbergwolf.com.He is located in Cherry Hill N.J.

**Bryan A. George, Esquire**