Jonathan P. Vuotto, Attorney No. 315601
McANDREW VUOTTO, LLC
13 Mt. Kemble Avenue
Morristown, New Jersey 07960
(973) 538-6308
Attorneys for Plaintiff, Sean T. Nicholas

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SEAN T. NICHOLAS,<br><br>        Plaintiff,<br><br>v.<br><br>DAVID A. PLASTINO,<br><br>        Defendant. | Case No. 23-cv-1259<br><br><br>**DECLARATION OF SEAN T. NICHOLAS IN SUPPORT OF MOTION TO REOPEN CASE TO ENFORCE SETTLEMENT** |

**SEAN T. NICHOLAS**, hereby declares as follows:

1. I am the Plaintiff in the above-captioned matter. I have personal knowledge of the facts set forth herein and submit this Declaration in support of my motion to reopen this case to enforce the settlement between me and Defendant, David A. Plastino ("Defendant").

2. I have been in the art business for many years and I have owned multiple art galleries in New York.

3. From in or around 2016 through early 2018, Defendant paid my prior art gallery a total of $128,082.00 for certain works of art, which were to be provided to Defendant through the gallery, not through me personally.

4. Through circumstances that were not my fault, but rather were caused by my former business partner in my prior gallery, Defendant did not receive the works (the "Art Purchased But Undelivered"). In or around July 2018, while I was traveling internationally, Defendant, aided by

my sister, who was dating Defendant at the time, entered my home in New Jersey without my permission and removed thirteen works of art without my authorization (the "Misappropriated Art"). My understanding is that Defendant took the Misappropriated Art to his residence in Malvern, Pennsylvania, where I believe it is still currently located.

5. Defendant, however, did not obtain the "provenance" documents for the Misappropriated Art, which establish my ownership of the works. At all relevant times, I have had the provenance documents for the Misappropriated Art in my possession and/or control. I am the title owner of the works.

6. On July 31, 2018, I met with Defendant at my home in New Jersey to discuss how to resolve the dispute relating to the Art Purchased But Undelivered and the Misappropriated Art. We agreed that Defendant would hold the Misappropriated Art as "collateral" until such time as I could reimburse Defendant for the $128,082.00 owed to him (by the gallery) for the Art Purchased But Undelivered. I agreed to this because, although I was upset that Defendant entered my home without permission, I felt bad about what had happened and wanted to correct the problem that my former partner had caused.

7. Therefore, we entered into the agreement entitled "Agreement Between Sean T. Nicholas and David A. Plastino to Settle All Claims Between the Parties Concerning the Art Listed in this Agreement" (the "Agreement"), which is attached to my Complaint as Exhibit A.

8. Under the Agreement, we agreed "to release each other from all claims between them concerning the art listed" in the Agreement, which includes the Art Purchased But Undelivered and the Misappropriated Art. Notably, the Agreement does not provide for any transfer of ownership in the Misappropriated Art from Plaintiff to Defendant, whether before or after the March 31, 2019 date set forth in the Agreement. Ownership of the Misappropriated Art

was always intended to remain with me and I am in possession and control of the provenance documents.

9. As a result of personal and financial issues and later the Covid-19 pandemic, I was unable to pay Defendant the amount owed by March 31, 2019.

10. In March 2023, however, I attempted to talk with Defendant about satisfying the obligation by a sale of the Misappropriated Art. Defendant refused to talk with me about selling the Misappropriated Art, however, so I filed this action, feeling that I had no other reasonable option to resolve the matter. I tried to be as reasonable as possible and indeed attempted settlement negotiations immediately. We reached a settlement with the assistance of Magistrate Judge Sitarski on June 15, 2023.

11. Defendant, however, has been completely unreasonable in connection with closing the settlement. He has taken ridiculous positions and made absorbent demands of me, even though Defendant is wealthy and, indeed, has made millions of dollars from artwork that I assisted Defendant in acquiring, including works by Banksy. He has continuously delayed the settlement, even though I have been very reasonable and have conceded to many of his demands. Based on Defendant's actions, it appears that he never had any intention of settling, but kept his true intentions hidden and dragged out the settlement to cost me time and money and, ultimately, he refused to settle under the terms we agreed on.

12. We sent Defendant a draft of the proposed settlement agreement on June 19, 2023 – four days after we agreed to settle before Judge Sitarski. A few days later, on June 22, 2023, Defendant left me a voicemail message stating that he received the proposed settlement agreement and that the parties were "in agreement about how we're moving forward" and he requested that I call him to work out some items rather than having the attorneys go back and forth. I no longer

trust Defendant and therefore I wanted the communications to be between our respective attorneys. I believe that Defendant was offended by this and, even though he clearly acknowledged his agreement to the settlement, he either intended to later torpedo the settlement or he was going to ensure that there would be substantial "back and forth" that would cost me money.

13. The settlement agreement that we sent to Defendant contained all the main terms of the settlement we agreed to before Judge Sitarski. Defendant initially agreed and had his attorney agree to the draft settlement agreement, except for a few minor terms that we worked out. Nevertheless, Defendant ultimately refused to sign the agreement and had his attorney subsequently change terms and come back asking for more concessions and fundamentally different deals. Solely in an effort to resolve this matter, I tried to be as reasonable as possible and conceded to nearly all of Defendant's demands.

14. For example, I initially reasonably requested that the Misappropriated Art be picked up by a professional, insured art handler – so that nothing would be damaged and the values would be preserved. Defendant at first agreed and then later changed his mind, seeking to save costs for himself. Ultimately, I conceded my position and agreed to allow Defendant to return the works rather than have a professional do it.

15. I initially reasonably asked to be reimbursed for any damages to the works, since Defendant is the one who possesses them and should be responsible for any damages incurred while they have been in his possession. Defendant unreasonably rejected this proposal, then partially agreed, then withdrew his agreement – and ultimately, I conceded my position and agreed to waive any damages to the works.

16. I agreed to allow Defendant's attorney to receive the proceeds of the sale of the Titus Kaphar work – the only piece with substantial value – into his attorney trust account and to

4

disburse the overage to the parties in the agreed-upon percentages. Unfortunately, Christie's ultimately did not agree with this proposal, but through no fault of mine.

17. I also agreed to never take possession of the Titus Kaphar in the unlikely event that the work did not sell at auction and agreed that Defendant would recover possession if that occurred.

18. Under our agreement, I was supposed to receive the other Misappropriated Art immediately, to hold in escrow pending the sale of the Titus Kaphar and Defendant's full payment – a point that was specifically agreed to by Defendant before Judge Sitarski on June 15, 2023 – but I conceded this item as well. In a last-ditch effort to get Defendant to proceed with the settlement and allow the Titus Kaphar to sell at auction in September 2023 (a primary term of the settlement), I agreed to allow Defendant to retain possession of the other Misappropriated Art until Defendant was paid.

19. Although Defendant agreed to the settlement both before Judge Sitarski and in the voicemail message that he left for me on June 22, over the course of trying to get Defendant to sign the settlement agreement, Defendant delayed, created issues where none existed, and attempted to completely change the settlement terms multiple times. My attorney's Declaration and Exhibits thoroughly document the back-and-forth caused by Defendant.

20. As we came down to the deadline to reopen this matter, Defendant continued to ask for more and more and attempted to insert himself in my discussions with Christie's about auctioning the Titus Kaphar work. Defendant's over-reaching and ever-increasing demands – none of which are part of the settlement made before Judge Sitarski – appear calculated only to delay this matter's resolution, exert his obvious need for control, further damage me and my reputation in the art industry, and destroy the settlement.

21. For example, Defendant does not have title to the Misappropriated Art – I do. Nevertheless, at one point Defendant requested that we tell Christie's that he is a "co-owner" of the Titus Kaphar, which is simply untrue and to which I would not agree, as set forth in the emails between my attorney and Defendant's counsel, Warren Wolf, Esq.

22. In an effort to appease Defendant's demands, however, I discussed with Christie's the fact that Defendant is a "lender" in this situation and that he must be paid the amount owed to him through the proceeds of sale of the Titus Kaphar work. Christie's was not opposed to this, and simply asked that they speak with Defendant to obtain certain information for their "Know Your Customer" requirements. Defendant, however, insisted that he be included on all discussions with Christie's – even though he has no right to do so, because he does not own the art. Allowing Defendant, who is volatile and not seriously involved in the art industry, to take positions with Christie's about artworks that he improperly took from my home without my permission is not acceptable to me and would likely embarrass me to Christie's – an auction house that I regularly work with in my business – which I therefore cannot risk.

23. I have agreed to pay Defendant more than he is entitled to under the Agreement, solely to settle this dispute. Defendant has turned the settlement upside down and prevented us from selling the Titus Kaphar work at auction in September 2023 as agreed. He apparently has purposely refused to close the settlement because he has been deprived of an opportunity to show how petty and ridiculous he is to Christie's, at my expense. His alleged reasoning – that he no longer trusts me because he never received the Art Purchased But Undelivered and should have received a benefit from those works – is patently insufficient and absurd considering that (i) he snuck into my home and took my artwork without my permission and (ii) the very purpose of the prior Agreement was for me and Defendant to release all claims against each other relating to the

Art Purchased But Undelivered and the Misappropriated Art. Thus, it makes no sense for Defendant to continue to bring up the fact that he did not receive the Art Purchased But Undelivered – the underlying claims relating to the works have now been settled <u>twice</u>.

24. I respectfully request that the Court grant my motion and compel Defendant to close the settlement as agreed in June 2023 and without Defendant's unwarranted and improper requests.

25. Furthermore, I have incurred substantial fees in dealing with Defendant's delay and improper refusal to close the settlement. The facts and documents submitted herewith clearly establish Defendant's bad faith breach of our settlement. Therefore, I respectfully request that the Court award me the expenses that I have incurred from the time that we agreed to the settlement through the date we have been forced to file this motion.

I declare under the penalty of perjury that the foregoing statements made by me are true and correct.

Dated: September 13, 2023

                                                */s/Sean T. Nicholas*
                                                Sean T. Nicholas